# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| BANK OF AMERICA CORPORATION, | ) | Civil Action No. 3:13-cv-446 |
| BANK OF AMERICA, N.A., BANC OF | ) | Hon. Max Cogburn, Jr. |
| AMERICA MORTGAGE SECURITIES, INC., | ) | |
| and MERRILL LYNCH, PIERCE, FENNER & | ) | |
| SMITH, INC. f/k/a BANC OF AMERICA | ) | |
| SECURITIES LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT

MCGUIRE WOODS LLP

Kenneth D. Bell (N.C. Bar No. 10800)
201 North Tryon Street, Suite 3900
Charlotte, North Carolina 28202
(704) 373-8999 (tel)
KBell@McGuireWoods.com

SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP

John K. Carroll (*pro hac vice* pending)
Boris Bershteyn (*pro hac vice* pending)
Four Times Square
New York, New York 10036-1811
(212) 735-3000 (tel)
John.Carroll@Skadden.com
Boris.Bershteyn@Skadden.com

Charles F. Smith (*pro hac vice* pending)
Amy L. Van Gelder (*pro hac vice* pending)
155 North Wacker Drive, Suite 2700
Chicago, Illinois 60606
(312) 407-0700 (tel)
Charles.Smith@Skadden.com
Amy.VanGelder@Skadden.com

*Counsel to Defendants Bank of America Corporation, Bank of America, N.A.,
Banc of America Mortgage Securities, Inc., and Merrill Lynch, Pierce,
Fenner & Smith, Inc. f/k/a Banc of America Securities LLC*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................................... iii

PRELIMINARY STATEMENT ................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................ 3

ARGUMENT ................................................................................................................................. 7

I.  The Complaint Should Be Dismissed Because the Government Fails To Plead
    That the Defendants Acted Knowingly or Willfully.............................................................. 8

II. The Complaint Should Be Dismissed Because the Government Fails To Plead
    Adequately That the Defendants Violated Section 1001 or 1014....................................... 11

    A.  Count One Should Be Dismissed Because the Complaint Fails To State a
        Section 1001 Claim as a Matter of Law.................................................................... 12

        1.  The Complaint Fails To Plead That the Alleged Misstatements or
            Omissions Were Material to Government Action. .................................... 12

        2.  Omission-Based Claims in Count One Should Be Dismissed
            Because the Complaint Fails To Plead That Defendants Utilized a
            Trick, Scheme, or Device To Conceal the Relevant Information............. 15

    B.  Count Two Should Be Dismissed Because the Complaint Fails To State a
        Section 1014 Claim as a Matter of Law.................................................................... 16

        1.  Section 1014 Does Not Apply to Communications Made in
            Connection With Investments in Securities.............................................. 17

        2.  Section 1014 Does Not Create Liability for Omissions........................... 21

        3.  Any Claim Predicated on the Alleged Omission of Channel
            Information Should Be Dismissed Because the Bank Provided That
            Information to FHLB-SF and Wachovia. ................................................. 22

III. The Claims Against BAC Should Be Dismissed................................................................. 23

CONCLUSION............................................................................................................................ 25

1842518.13-NYCSR07A                                    MSW - Draft November 8, 2013 - 11:28 AM

Case 3:13-cv-00446-MOC-DSC   Document 19-1   Filed 11/08/13   Page 2 of 30

## TABLE OF AUTHORITIES

Page

**CASES**

*Allen v. Zurich Insurance Co.*,
667 F.2d 1162 (4th Cir. 1982) ...........................................................................................4, 23

*American Chiropractic Association, Inc. v. Trigon Healthcare, Inc.*,
367 F.3d 212 (4th Cir. 2004) ...................................................................................................4

*Arnold v. Eastern Airlines, Inc.*,
712 F.2d 899 (4th Cir. 1983) .................................................................................................22

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007).................................................................................................................23

*Broussard v. Meineke Discount Muffler Shops, Inc.*,
155 F.3d 331 (4th Cir. 1998) .................................................................................................24

*Crandon v. United States*,
494 U.S. 152 (1990)..................................................................................................................20

*Gustafson v. Alloyd Co., Inc.*,
513 U.S. 561 (1995)..................................................................................................................18

*Haberland v. Bulkeley*,
896 F. Supp. 2d 410 (E.D.N.C. 2012)...........................................................................8, 15

*Matrix Capital Management Fund, LP v. BearingPoint, Inc.*,
576 F.3d 172 (4th Cir. 2009) ...................................................................................................9

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
591 F.3d 250 (4th Cir. 2009) ...........................................................................................7, 8

*Nolte v. Capital One Financial Corp.*,
390 F.3d 311 (4th Cir. 2004) ...........................................................................................4, 23

*Pfizer Inc. v. Synthon Holding, B.V.*,
386 F. Supp. 2d 666 (M.D.N.C. 2005) ...............................................................................24

*Reass v. United States*,
99 F.2d 752 (4th Cir. 1938) ...................................................................................................20

*United States v. Anderson*,
829 F.2d 1121, 1987 WL 38641 (4th Cir. 1987) (unpublished table decision)................10

Case 3:13-cv-00446-MOC-DSC   Document 19-1   Filed 11/08/13   Page 3 of 30

*United States v. Devoll,*
    39 F.3d 575 (5th Cir. 1994) ...................................................................................20

*United States v. Greenberg,*
    842 F.2d 1293, 1988 WL 21229  (4th Cir. 1988) (unpublished table decision)...........9, 10

*United States v. Hester,*
    880 F.2d 799 (4th Cir. 1989) ............................................................................9, 10

*United States v. Ismail,*
    97 F.3d 50 (4th Cir. 1996) ..............................................................................12, 13

*United States v. Kungys,*
    485 U.S. 759 (1988)..........................................................................................14

*United States v. Kwiat,*
    817 F.2d 440 (7th Cir. 1987) ...........................................................................13, 14

*United States v. Kurlemann,*
    __ F.3d __, 2013 WL 5616757 (6th Cir. 2013) ..............................................21

*United States v. Littleton,*
    76 F.3d 614 (4th Cir. 1996) .............................................................................13, 14

*United States v. London,*
    550 F.2d 206 (5th Cir. 1977) ..............................................................................16

*United States v. Maxey,*
    898 F.2d 148, 1990 WL 29194 (4th Cir. 1990) (unpublished table decision).................16

*United States v. Science Applications International Corp.,*
    626 F.3d 1257 (D.C. Cir. 2010) ...........................................................................9

*United States v. Seay,*
    718 F.2d 1279 (4th Cir. 1983) ..............................................................................8

*United States v. Swaim,*
    757 F.2d 1530 (5th Cir. 1985) ..............................................................................16

*United States v. Thompson/Center Arms Co.,*
    504 U.S. 505 (1992)..........................................................................................20

*United States v. West,*
    666 F.2d 16 (2d Cir. 1981).........................................................................8, 9, 10

*United States v. Whaley,*
    786 F.2d 1229 (4th Cir. 1986) ..............................................................................9

*United States v. Woodward,*
    469 U.S. 105 (1985)......................................................................................15

*Wahi v. Charleston Area Medical Center, Inc.,*
    562 F.3d 599 (4th Cir. 2009) ......................................................................7

*Williams v. United States,*
    458 U.S. 279 (1982)........................................................................20, 21, 22

**STATUTES**

12 U.S.C. § 1833a ............................................................................................2

18 U.S.C. § 1001 ...................................................................................... passim

18 U.S.C. § 1014 ...................................................................................... passim

18 U.S.C. § 1623 ..........................................................................................13

1923 Amendments to Federal Farm Loan Act § 211(c), 42 Stat. 1454 ........................................22

Farm Credit Act of 1935 § 21, 49 Stat. 313 ..............................................22

Federal Farm Loan Act § 31, 39 Stat. 360 ................................................22

National Agricultural Credit Corps. § 209(h), 42 Stat. 1461 .......................................22

National Agricultural Credit Corps. § 216(c), 42 Stat. 1461 .......................................22

**REPORTS**

H. R. Rep. No. 91-1457 (1970)..................................................................19

S. Rep. No. 1078, 88th Cong., 2d Sess. (1964) ........................................19

**RULES**

Federal Rule of Civil Procedure 9(b)........................................12, 16, 17, 24

Federal Rule of Civil Procedure 12(b)(6) ..................................................1

Defendants Bank of America Corporation ("BAC"), Bank of America, N.A. ("BANA"), Banc of America Mortgage Securities, Inc. ("BOAMS"), and Merrill Lynch, Pierce, Fenner & Smith, Inc. f/k/a/ Banc of America Securities LLC ("BAS") (collectively, the "Bank" or "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the Government's Complaint (ECF No. 1). The Court should dismiss the Complaint in its entirety, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief may be granted.

## PRELIMINARY STATEMENT

This case concerns mortgage-backed securities sold to a small group of sophisticated investors, including financial institutions, just months before the nationwide economic collapse of 2008. The mortgages underlying the securities were held by high quality, "prime"—not "subprime"—borrowers. Nevertheless, the value of the securities still suffered during the ensuing economic downturn.

Financial calamities often give rise to securities fraud litigation, and the Government's Complaint has the familiar ring of a prospectus fraud claim. It alleges that, in hindsight, the Bank should have provided investors more information about the risk of investing in these securities.

Yet this is not the typical securities fraud case. The investors, who enjoy a private right of action, have not sued the Bank. And the parallel complaint that the Securities and Exchange Commission ("SEC") filed does not allege any knowing or intentional misconduct by the Bank. No individual is named in the Complaint or in the SEC's case.

Even more striking, the Complaint—despite repeatedly stating that the Bank violated the securities laws—conspicuously avoids bringing any claims under the securities laws. Instead,

the Government asserts two claims under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1833a—a statute enacted in the wake of the savings and loan crisis to crack down on the mismanagement of financial institutions. FIRREA adds an extraordinary remedy to the Government's kit: It imposes civil penalties for crimes against financial institutions, but relieves the Government of the obligation to prove those crimes beyond a reasonable doubt. It is a unique tool created to deal with a limited set of circumstances.

To plead a FIRREA violation, the Government must identify a predicate crime. Congress did not, however, make securities fraud a FIRREA predicate. (That is understandable because FIRREA does not purport to regulate securities offerings and was never intended to displace the federal securities laws.) So the Government has alleged two other predicate crimes: the federal false statements statute, 18 U.S.C. § 1001, and a statute prohibiting fraud in "[l]oan and credit applications," 18 U.S.C. § 1014. The Government's pleading strategy thus seeks to sidestep the rigorous pleading requirements for securities fraud.

But by charging Sections 1001 and 1014 as predicate offenses, the Government stumbles on a different obstacle—these statutes do not fit the alleged facts. To begin with, both statutes describe specific intent crimes that require, at a minimum, allegations that an authorized agent of each Defendant had actual knowledge that its statements were false. Generalized assertions of "corporate" or "constructive" knowledge do not suffice as a matter of law, but that is all the Complaint serves up. This dearth of factual allegations is particularly notable because, unlike a typical civil securities fraud pleading, the Government's Complaint follows a three-year investigation with an extensive documentary record.

The deficiencies in the Complaint do not end there. Because Section 1001 was designed to penalize falsehoods that interfere with government operations, the alleged misstatement must

have the tendency to influence the actions of a federal agency before it can violate Section 1001. Here, however, the alleged misstatements were soliciting investors, not the SEC, to buy securities; not surprisingly, the Complaint fails to say what governmental action those misstatements were supposed to prompt. This failure is fatal to the Section 1001 claim.

The Government's claims under Section 1014 fare no better. That statute proscribes making false statements to financial institutions when those institutions engage in banking or insurance—for example, lying on loan or insurance applications. Here, however, the financial institutions were investing in securities, not loaning money or insuring crops. The Government's endeavor to turn Section 1014 into a new regime for regulating securities offerings cannot be reconciled with the text of that statute, its legislative history, or its interpretation by the courts.

Moreover, most of the Complaint alleges that the Bank <u>omitted</u> information from securities offering documents, not that it made <u>direct false statements</u> in those documents. These omission-based claims are unsustainable as a matter of law. Section 1014 proscribes only false statements, not omissions. And Section 1001 imposes rigorous pleading standards for any claims based on omissions—standards the Complaint does not come close to satisfying.

In short, the Complaint fails to plead the requisite actual knowledge by an agent of each Defendant, and the specific violations charged in the Complaint—Sections 1001 and 1014, as predicates to FIRREA penalties—are legally deficient. The Complaint should be dismissed.

## STATEMENT OF FACTS

When stripped of its rhetorical flourish and conclusory statements, the Complaint alleges the following: In a securitization transaction called BOAMS 2008-A, investors received Certificates giving them rights to payments on a pool of residential mortgages. BANA

originated the mortgages, BAS underwrote the offering of the Certificates, and BOAMS served as depositor.

In December 2007, BAS provided information about the loan pool underlying the Certificates to two financial institutions—Wachovia and Federal Home Loan Bank of San Francisco ("FHLB-SF")—both of which were early potential investors in the transaction. Included in the information provided was the clear disclosure that approximately 70 percent of the loan pool originated from third party mortgage brokers, a conduit known as the wholesale channel. (Compl. ¶ 93; *SEC v. Bank of America, N.A.*, No. 13-cv-447 (W.D.N.C.) ECF No. 1, ¶ 59; Exs. 1, 2 (providing FHLB-SF and Wachovia with preliminary information disclosing that approximately 72 percent of the loans proposed to be included in the transaction were originated through the wholesale channel).)[1]

The final loan pool included 1,191 "jumbo"[2] adjustable rate mortgages originated between July and November 2007. (Compl. ¶ 35.) These loans were not subprime mortgages: To the contrary, the borrowers had a weighted average credit score of 750 (*Id.* ¶ 36), most had more than 20 percent equity in the property at issue (Ex. 3 (Prospectus Supp. at A-22)), and a large majority of the mortgages were against the primary residences of the borrowers (Compl.

---

[1]   The Court can take notice of allegations contained in the complaint filed in the related action brought by the SEC. *See Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1166-67 (4th Cir. 1982) (party "may properly be precluded as a matter of law from adopting a legal position in conflict with one" taken in a "related litigation" to "prevent the use of 'intentional self-contradiction . . . as a means of obtaining unfair advantage'"); *see also Nolte v. Capital One Fin. Corp.*, 390 F.3d 311, 317 n.1 (4th Cir. 2004) (taking notice of complaint in related SEC action). Likewise, the Court may consider on a motion to dismiss documents "'integral to and explicitly relied on in the complaint'" when there is no dispute as to their authenticity. *Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (citation omitted).

[2]   At the time of the transaction, a "jumbo" mortgage generally had principal above $417,000 when issued.

¶ 36). In total, the mortgages in the loan pool represented approximately $855 million in principal. (*Id.* ¶ 35.)

On January 29, 2008, BOAMS filed a Prospectus and Prospectus Supplement for the transaction, which described the characteristics of the mortgages and disclosed that mortgages originated in the wholesale channel, albeit without specifying precisely how many. (Ex. 3 (Prospectus Supp. at S-37; Prospectus at 29).)[3] The documents explained that the loans were underwritten "materially in accordance" with the Bank's general underwriting standards, which allowed loan underwriters to utilize "compensating factors to offset one or more features of the loan transaction that may not specifically comply with the [underwriting] guidelines." (Ex. 3 (Prospectus at 31).) The Prospectus Supplement also disclosed various risks, including that the market for mortgage-backed securities was deteriorating, adjustable rate mortgages may be more likely to prepay, geographic concentration of loans introduced further risk, and mortgage defaults or delinquencies could reduce returns on the Certificates. (Ex. 1 (Prospectus Supp. at S-26-S-35).)

BOAMS sold the Certificates to investors in early 2008, and Wachovia and FHLB-SF bought approximately 98 percent of the offered securities. (Compl. ¶ 47.) These investors were sophisticated financial institutions with substantial experience investing in residential mortgage-backed securities ("RMBS"). FHLB-SF 2007 Annual Report on Form 10-K, at 39 (filed Mar.

---

[3] The Government at times makes factual allegations that it should know are untrue. For example, paragraph 92 of the Complaint alleges that a Bank employee told a single investor that there were no wholesale channel loans in this securitization. What the Government omits, and what the Bank will demonstrate to the Court if this case proceeds past this motion—as it should not—is that this was an unintentional mistake that was in fact corrected the same day.

28, 2008)[4] (disclosing that FHLB-SF had a portfolio of $34.1 billion mortgage-backed securities as of December 31, 2007); Wachovia Corp. Form 10-Q, Ex. 19 at 90 (filed May 12, 2008)[5] ("During the three months ended March 31, 2008, the Company purchased $2.6 billion of RMBS . . . .").

In 2008 and 2009, an unprecedented downturn in residential real estate occurred throughout the United States, and many RMBS investors suffered significant losses. BOAMS 2008-A was no exception, but no investor has sued the Bank in connection with the transaction.[6]

In 2010, the SEC (and later the DOJ) began a three-year investigation of the Bank's RMBS business. The Government has taken testimony from dozens of witnesses and received millions of pages of documents. On August 6, 2013, the SEC filed a complaint alleging a non-fraud violation of Section 5 and negligence-based (rather than intentional) violations of Section 17 of the Securities Act of 1933. *See SEC v. Bank of America, N.A.*, No. 13-cv-447 (W.D.N.C.) ECF No. 1.

On the same day, the DOJ filed its Complaint, which alleges that the offering documents accompanying the sale of the Certificates:

- contained seven false statements (for example, that the mortgages complied with underwriting guidelines) (Compl. ¶¶ 144, 147);
- omitted seventeen material facts (for example, the proportion of mortgages originated from the wholesale channel) (*id*. ¶ 145); and

---

4    *Available at* http://www.sec.gov/Archives/edgar/data/1316944/000119312508067636/
d10k.htm.

5    *Available at* http://www.sec.gov/Archives/edgar/data/36995/000095014408003965/
g13319qexv19.htm.

6    It is notable that FHLB-SF filed an action against numerous financial institutions that sold it RMBS, including BAS and BOAMS, but it opted not to bring claims related to the BOAMS 2008-A transaction. *See Fed. Home Loan Bank of S.F. v. Credit Suisse Sec. (USA) LLC*, 10-cv-3045 (N.D. Cal. July 12, 2010).

- included false and misleading statistics concerning the loan pool (*id.* ¶ 146).

The Complaint adopts the form of a securities fraud action, even stating in several places that the Bank violated the "securities laws." (*Id.* ¶¶ 45, 93, 96, 145p.) But it does not plead securities fraud or any other violations of the securities laws. Instead, the Government seeks civil penalties under FIRREA, relying on two predicate violations: the federal false statements statute, 18 U.S.C. § 1001, and a statute prohibiting fraud in "[l]oan and credit applications," 18 U.S.C. § 1014. (Compl. ¶¶ 141-55.)

## ARGUMENT

The Complaint should be dismissed, in its entirety, for two independent reasons. First, the two criminal statutes underlying the Complaint penalize only false statements or concealments that are <u>knowingly</u> made. And the Government must plead facts sufficient to attribute this knowing misconduct to at least one authorized agent of each Defendant. On this score, the Complaint fails. It vaguely ascribes knowledge to corporations, not individuals, which is not a permissible way to plead scienter. Where the Complaint does attempt to attribute knowledge to the Bank's employees, it typically alleges "constructive" knowledge—not the actual knowledge required to plead its case.

Second, the Government strains to shelter its claims under the FIRREA umbrella even though the alleged facts do not fit the predicate criminal statutes.[7] Neither Section 1001 nor

---

[7]    A court reviewing a motion to dismiss accepts as true the plaintiff's well-pled allegations, but "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). "[U]nwarranted inferences, unreasonable conclusions, or arguments" also do not suffice. *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 n.26 (4th Cir. 2009) (internal quotation marks omitted). Moreover, when analyzing the motion, the Court "may take judicial notice of federally regulated filings," even if they are not incorporated by reference in the complaint, and "need not accept as true a plaintiff's factual allegations to the extent

*(cont'd)*

Section 1014 was designed to provide securities investors with a remedy for fraud.  Rather, Section 1001 prohibits misstatements that have "a natural tendency to influence" government action.  No such claim can plausibly be made about the misstatements alleged here, which were directed to investors.

Section 1014 is even less applicable.  That statute protects lending and insurance institutions from fraud in loans and applications—not in prospectuses for securities in which they happen to invest.  Moreover, Section 1014 penalizes false statements, not the alleged omissions that constitute the bulk of the Government's case.  Finally, the Government's own pleadings recognize that Wachovia and FHLB-SF (the only two investors relevant to a Section 1014 claim) actually <u>received</u> from the Bank some of the very information the Government accuses the Bank of <u>concealing</u>.

## I.    The Complaint Should Be Dismissed Because the Government Fails To Plead That the Defendants Acted Knowingly or Willfully.

The Complaint consistently fails to plead that the Defendants made their alleged misstatements with the requisite criminal intent.  To withstand dismissal, the Government must allege facts demonstrating that the Defendants misstated or concealed material facts "knowingly and willfully," 18 U.S.C. § 1001(a), or made false statements "knowingly," 18 U.S.C. § 1014.  *See United States v. Seay*, 718 F.2d 1279, 1284 (4th Cir. 1983) (Section 1001 requires proof of "fraudulent intent"); *United States v. West*, 666 F.2d 16, 19-20 (2d Cir. 1981) (reversing Section 1014 conviction where jury was inadequately instructed that defendant needed to have known his

---

*(cont'd from previous page)*

they contradict such documents."  *Haberland v. Bulkeley*, 896 F. Supp. 2d 410, 419-20 (E.D.N.C. 2012) (collecting cases).  If the allegations do not "produce an inference of liability strong enough to nudge the plaintiff's claims 'across the line from conceivable to plausible,'" the Complaint must be dismissed.  *Nemet*, 591 F.3d at 256 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009) (internal quotation marks omitted)).

statement was false); *United States v. Whaley*, 786 F.2d 1229, 1231 (4th Cir. 1986) (affirming jury charge that permitted jury to convict defendant under Section 1014 only upon finding that defendant "acted with the specific intent to influence the bank's action on his loan").

The Government may not plead its case by ascribing this knowing misconduct to the Defendants as institutions. Rather, because Defendants are all corporate entities, the Government must allege that <u>at least one single authorized agent</u> of each defendant entity possessed the requisite knowledge. *See Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 182 (4th Cir. 2009) (if the defendant is a corporation, "the plaintiff 'must allege . . . scienter with respect to at least one authorized agent of the corporation'" (quoting *Teachers' Ret. Sys. v. Hunter*, 477 F.3d 162, 184 (4th Cir. 2007))); *United States v. Science Applications Int'l Corp.*, 626 F.3d 1257, 1275-77 (D.C. Cir. 2010) (vacating verdict in FCA action where, based on inappropriate instruction, "jury might have concluded that [defendant] acted knowingly . . . if the company could have or should have realized it had potential conflicts based on the 'collective pool of information'" (citation omitted)).

Nor can the Government fill this gap by pleading "constructive knowledge"—that is, allegations that Defendants or their agents "should have known" or "must have known" the Defendants' statements were false. To the extent that the Complaint fails to plead <u>actual</u> knowledge of a single authorized agent of a Defendant, it must be dismissed as to that Defendant. *West*, 666 F.2d at 19; *United States v. Greenberg*, 842 F.2d 1293, 1988 WL 21229, at *3 (4th Cir. 1988) (unpublished table decision); *see also United States v. Hester*, 880 F.2d

799, 802 (4th Cir. 1989) (analyzing "knowing" in analogous statute and approving formulation of knowledge under 18 U.S.C. § 1001 adopted by the Second Circuit).[8]

The Complaint fails to meet these standards. Time and time again, the Government relies on generic allegations that "Defendants"—each of them a corporate entity—intended to defraud investors. (*See* Compl. ¶¶ 2, 9, 52, 129, 142-43 (alleging "Defendants" (or some of them) "willfully" misled investors, provided false information, and overvalued securities); *id.* ¶ 5 (alleging "Defendants" "intended" to affect investors' decisions); *id.* ¶ 52 (alleging "Defendants" had "intent" to induce investors).)

When the Government does refer to a corporate agent, it fails to plead that the agent had the actual knowledge or intent necessary to violate Sections 1001 or 1014. For example, the Complaint alleges that a BANA Senior VP "must have known," on account of her position, that BANA failed to obtain and use certain Internal Revenue Service forms in the loan origination process. (*Id.* ¶ 103.) At other times, the Complaint states that Bank employees—the BAS Managing Director and the BANA Senior VP—"had access to" or "received" information that should have led them to reach conclusions that needed to be disclosed to investors. (*Id.* ¶¶ 61, 81-83, 89, 117 (alleging Managing Director and Senior VP "received" or "had access to" certain reporting and communications that purportedly showed worsening trends).) These allegations of constructive—not actual—knowledge fail to plead violations of Sections 1001 or 1014 as a matter of law.

---

[8]   If a defendant lacked actual knowledge that a statement was false, a Section 1001 or 1014 claim could be made where the defendant acted with "conscious purpose to avoid learning the truth." *United States v. Anderson*, 829 F.2d 1121, 1987 WL 38641, at *1 (4th Cir. 1987) (unpublished table decision); *West*, 666 F.2d at 19; *Greenberg*, 1988 WL 21229, at *3. But the Complaint does not allege conscious avoidance occurred.

As a result, the Complaint fails to plead scienter with respect to each of the seven alleged false statements (*id.* ¶¶ 144a-c, 147a-d), fifteen of the seventeen alleged concealments (*id.* ¶ 145a-i, k-o, q), and all of the allegedly false and misleading statistics (*id.* ¶ 146).[9] The Complaint should be dismissed to the extent it rests on those allegations.

## II. The Complaint Should Be Dismissed Because the Government Fails To Plead Adequately That the Defendants Violated Section 1001 or 1014.

The Complaint should be dismissed, in its entirety, for an independent reason: Even had the Government adequately alleged scienter, it still fails to plead the substantive elements of the two predicate criminal offenses underlying this FIRREA action. Section 1001, the general false statements statute, penalizes only those misstatements that have the tendency to affect government action. Here, however, the misstatements were allegedly made to attract investors, not to prompt government activity.

The Complaint's Section 1014 claims are similarly misplaced. That statute penalizes fraud in connection with banking or insurance activity—for example, lies on loan or insurance applications. But this case is not about banking or insurance; it concerns an investment that lost value. And when financial institutions decide to invest in securities, it is the federal securities laws—not Section 1014—that safeguard them. Because neither Section 1001 nor Section 1014 is applicable here, both Count One and Count Two of the Complaint should be dismissed. In their entirety.

---

[9] Although the DOJ manages to allege that the BAS Managing Director and the BANA Senior VP had actual knowledge that BAS did not conduct third party due diligence on BOAMS 2008-A, that fact was disclosed to investors. (Ex. 3 (Prospectus at 32 (disclosing that the Bank only conducted a third party review of loans originated by other institutions)).) Similarly, the DOJ's allegation that the Senior VP knew of alleged worsening trends in mortgages also cannot form the basis for a claim because that fact was disclosed. (Ex. 3 (Prospectus Supp. at S-26 (disclosing increase in delinquencies)).)

11

The Complaint must also be dismissed to the extent it alleges that the Bank omitted material facts from the transaction documents (rather than made affirmative false statements in them). To hold the Bank liable for omissions under Section 1001, the Government must plead that those omissions were concealed by trick, scheme, or device. The Complaint fails to do so. And Section 1014 does not penalize omissions at all.

### A. Count One Should Be Dismissed Because the Complaint Fails To State a Section 1001 Claim as a Matter of Law.

#### 1. The Complaint Fails To Plead That the Alleged Misstatements or Omissions Were Material to Government Action.

To plead a Section 1001 claim under FIRREA, the Government must allege with particularity facts showing that the supposed misstatement was "material" to government action—in other words, that it has "'a natural tendency to influence agency action or is capable of influencing agency action.'" *United States v. Ismail*, 97 F.3d 50, 60 (4th Cir. 1996) (reversing conviction for violating Section 1001 because effect on agency action was not sufficiently proven); Fed. R. Civ. Pro. 9(b). The Complaint mentions two different entities in its Section 1001 claim—the SEC and FHLB-SF—without identifying which is the "agency" allegedly influenced by misstatements. Either way, however, the Government's Section 1001 claim should be dismissed because the Complaint does not plausibly allege either that the Bank's purported misstatements tended to influence any SEC action or that FHLB-SF is a government agency.

The Complaint says nothing about the manner in which the Bank's allegedly false or misleading documents—the prospectus, prospectus supplement, free writing prospectuses, and PSA (*see* Compl. ¶ 143)—were capable of influencing SEC action. Indeed, the <u>only</u> fact concerning the SEC alleged in the Complaint is that the Defendants filed the transaction documents there. (*Id.* ¶¶ 2, 5, 15, 22, 38, 39, 42, 44, 59, 76, 143.)

12

It is black-letter law that the facts alleged here are insufficient to plead a Section 1001 violation. The decision in *United States v. Kwiat*, 817 F.2d 440, 444-46 (7th Cir. 1987), is instructive. There the prosecution alleged that the defendant made false statements on mandatory forms that were established by the Department of Housing and Urban Development and sometimes reviewed by the Federal Deposit Insurance Corporation. The defendant was convicted of violating Section 1001, but the Seventh Circuit reversed. It reasoned that the prosecution had "never linked the agency's procedures with" the alleged misstatements on government forms in a manner that showed the misstatements' potential to affect agency action. *Id*. at 445. The Fourth Circuit has subsequently endorsed the reasoning of *Kwiat*. *See Ismail*, 97 F.3d at 61.

Here, as in *Kwiat*, the Government has pleaded no facts about the anticipated effect of the Bank's alleged misstatements on SEC action. Indeed, the Complaint is devoid of any allegations whatsoever about SEC procedures or actions.

The Fourth Circuit reached the same conclusion as the *Kwiat* court in *United States v. Littleton*, where the defendant gave false testimony at a suppression hearing during a criminal prosecution of her son. 76 F.3d 614, 615-17 (4th Cir. 1996). The judge who presided over the hearing ruled that her testimony, even if true, would not influence the hearing's outcome. *Id.* The defendant was subsequently charged with, and convicted of, perjury for her hearing testimony, but the Fourth Circuit reversed the conviction because the perjury was immaterial. *Id*. at 617-18. As the Fourth Circuit reasoned, the suppression hearing would have apparently

13

yielded the same result whether the defendant perjured herself or told the truth.  *Id*.  Therefore, the false testimony did not have the requisite tendency to influence government action.  *Id*.[10]

*Littleton* makes clear that the alleged filing of false statements with the SEC is not sufficient to show that the statements had the tendency to influence the SEC's action.  After all, the false testimony in *Littleton* was no less presented to a judge at the suppression hearing than the forms in this case were presented to the SEC.  Yet, just as in *Littleton*, the Government has not alleged what difference, if any, the supposedly false statements tended to make to the SEC's actions.  Accordingly, the Section 1001 claims must be dismissed.

Nor would it help the Government to argue that the SEC's claims against the Bank under the Securities Act of 1933 (brought contemporaneously with this action) demonstrate that the Bank's misstatements influenced the SEC's actions.  After all, enforcement actions were also undertaken in *Kwiat* and *Littleton*.  But in both cases the convictions were reversed for lack of a material effect on government action.[11]

In any event, if false statements were material for purposes of Section 1001 whenever a government body had the power to investigate and prosecute the maker of those statements, the

---

[10]  Although the defendant in *Littleton* was convicted of violating 18 U.S.C. § 1623, the "natural tendency to influence" standard applies equally under that statute and Section 1001.  *See United States v. Kungys*, 485 U.S. 759, 769-70 (1988) (describing a consistent standard of materiality across a range of federal false statement statutes, of which "[t]he most prominent . . . is perhaps 18 U.S.C. § 1001"); *Littleton*, 76 F.3d at 618 (relying on the standard set forth in *Kungys*).

[11]  Notably, even though the SEC need only prove negligence (rather than intentional wrongdoing), it has still chosen not to bring claims based on several of the factual theories put forward in this Complaint.  (*Compare* Compl. ¶145k-n *with SEC v. Bank of America*, N.A. et al., 13-cv-447 (W.D.N.C.), ECF No. 1. (displaying that the SEC has not brought claims based on alleged omissions related to self-employed borrowers or "PaperSaver" loans).)  It is telling that the agency that investigated this matter for a full three years does not believe it has a basis to proceed on these theories.

statute would have an absurdly broad reach. For example, Section 1001 could then be violated by misstatements to purely private parties under circumstances that might prompt an FBI investigation—such as health care fraud or insurance fraud. There is no indication that Congress intended Section 1001 to have so broad a sweep over private conduct.

In sum, the Government has not adequately alleged facts that, if true, would demonstrate that the supposed misstatement had "a natural tendency to influence" or was "capable of influencing" SEC action.

Nor can the Government fix this shortcoming by asserting that FHLB-SF was the agency influenced by the Bank's misstatements. FHLB-SF is not a part of the federal government. As FHLB-SF maintains in its most recent annual report filed with the SEC, Federal Home Loan Banks "are not government agencies and do not receive financial support from taxpayers." *See* FHLB-SF 2012 Annual Report on Form 10-K, at 1 (filed Mar. 15, 2013) (emphases added).[12] This Court may take judicial notice of that fact. *Haberland*, 896 F. Supp. 2d at 419-20.

Thus, Count One should be dismissed for failing to allege a Section 1001 claim.

> ### 2. Omission-Based Claims in Count One Should Be Dismissed Because the Complaint Fails To Plead That Defendants Utilized a Trick, Scheme, or Device To Conceal the Relevant Information.

To the extent Count One is premised on alleged omissions (*see* Compl. ¶ 145), it should be dismissed for an additional, independent reason: Where the Government alleges not a false statement but an omission, it must plead, in addition to the other elements of Section 1001, "concealing and covering up by trick, scheme, or device." *United States v. Woodward*, 469 U.S. 105, 108 (1985) (Section 1001 "proscribes the nondisclosure of a material fact only if the fact is

---

[12] *Available at* http://www.sec.gov/Archives/edgar/data/1316944/000131694413000005/a201210kfhlbsf.htm.

'conceal[ed] . . . by any trick, scheme, or device'" (emphasis added)); *United States v. Maxey*, 898 F.2d 148, 1990 WL 29194, at *4 (4th Cir. 1990) (unpublished table decision) ("[i]n order to convict for concealment under § 1001, the government must prove the material fact was concealed by means of a 'trick, scheme or device'"); *United States v. Swaim*, 757 F.2d 1530, 1533 (5th Cir. 1985) ("The elements of an offense under the concealment portion of the statute are: (1) knowingly and willfully; (2) concealing and covering up by trick, scheme, or device; (3) a material fact; (4) in any matter within the jurisdiction of a department or agency of the United States." (citations omitted)).

In other words, the Government must plead more than passive failure to disclose the omitted information; it must also allege "affirmative acts constituting a trick, scheme, or device by which [the Bank] sought to conceal material facts." *United States v. London*, 550 F.2d 206, 213 (5th Cir. 1977).

Here, after a three-year investigation, the Complaint lacks even a single factual allegation suggesting that any Bank employee took any affirmative step to conceal facts about the Certificates. That is not sufficient under Section 1001 as a matter of law, and Count One should be dismissed for this additional reason to the extent it pleads omissions. *See* Fed. R. Civ. P. 9(b).

**B.    Count Two Should Be Dismissed Because the Complaint Fails To State a Section 1014 Claim as a Matter of Law.**

Count Two, which alleges a violation of Section 1014, should likewise be dismissed as a matter of law. To plead a Section 1014 claim, the Government must allege, with particularity, that the Bank (1) "knowingly ma[de] any false statement or report or willfully overvalue[d] any land, property or security;" (2) "for the purpose of influencing in any way the action of" a covered lending and insurance institution; (3) "upon any application, advance, discount, purchase, purchase agreement, repurchase agreement, loan, or insurance agreement or

application for insurance or a guarantee, or any change or extension of any of the same, by renewal, deferment of action or otherwise, or the acceptance, release, or substitution of security therefor."  18 U.S.C. § 1014; Fed. R. Civ. P. 9(b).

Here, the Government claims that the Bank omitted seventeen facts (Compl. ¶¶ 145, 151), made eight false statements (*id.* ¶¶ 144, 147, 151), and offered false statistics (*id.* ¶¶ 146, 151) "for the purpose of influencing the action of investors in the Certificates, including FHLB-San Francisco and Wachovia, in connection with the purchase of the Certificates" (*id.* ¶ 152). These allegations are insufficient for three independent reasons.  First, Section 1014 proscribes false statements to covered lending and insurance institutions <u>only</u> in the context of those institutions' core banking, credit, or insurance functions.  Here, by contrast, misstatements were allegedly made to lending institutions in their capacity as "investors."  Second, Section 1014 prohibits false statements, not omissions.  Accordingly, the Section 1014 claim should be dismissed to the extent it rests on allegedly concealed facts.  Third, Section 1014 claims should be dismissed to the extent they rest on allegedly withheld mortgage channel information. According to the Government's own allegations, the Bank provided complete channel information to FHLB-SF and Wachovia and, therefore, could not plausibly be accused of withholding that information from public documents "for the purposes of influencing" the actions of FHLB-SF and Wachovia.

> **1.  Section 1014 Does Not Apply to Communications Made in Connection With Investments in Securities.**

Count Two should be dismissed in its entirety because Section 1014 does not apply when covered lending and insurance institutions are acting as "investors."  As the text of the statute, its legislative history, and its construction by the courts all confirm, Section 1014 protects those

institutions when they act in their core banking or insurance capacity, not in every conceivable sphere of their activity.

The Government's claim hinges on a basic misreading of Section 1014. According to the Complaint, two of the covered institutions "purchased" the Certificates, and Section 1014 prohibits the use of false statements to influence certain activities by such institutions, including the making of a "purchase." But courts do not interpret each word of a statute—here, the word "purchase"—in complete isolation from the others. Rather, they apply the rule "that a word is known by the company it keeps . . . to avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving 'unintended breadth to the Acts of Congress.'" *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 575 (1995). Accordingly, the word "purchase" in Section 1014 must be read in light of the words that surround it—"application," "loan," "insurance agreement," "application for insurance or a guarantee," and so on. All of these words unambiguously refer to banking or insurance activities, not investing.

If the word "purchase" were not confined to the banking and insurance context, the results would be aberrant—indeed, absurd. For example, Section 1014 would then punish misrepresentations made to covered institutions, including all FDIC-insured banks, in the course of their routine commercial or employment transactions (say, "purchases" of office supplies or cleaning services). Misrepresentations in these commercial contexts are penalized, if at all, by state law; there is no indication that Congress intended Section 1014 to federalize this vast universe of conduct.[13]

---

[13]   Reading "purchase" this broadly would also lead to absurd parallel results for its neighboring words. Should Section 1014 create federal criminal liability for embellishment of a resume in connection with a job "<u>application</u>" at a covered institution? Under the broad interpretation espoused by the Government, it would—after all, the word "application" appears in the statute.

Moreover, if Section 1014 covered the "purchase" of investments, it would create an unprecedented, new regime for regulating securities—in addition to and inevitably inconsistent with the federal securities laws. Under such a scheme, whether Section 1014 covered a particular issuer would depend entirely on the happenstance that a covered lending or insurance institution invested in the issuer's security—a fact that may not even be known to the issuer until the investment is made, or perhaps not at all. Nothing suggests that Congress intended to establish such an unusual parallel (and indeed contradictory) securities enforcement scheme when it enacted Section 1014.

In short, the Complaint reads the text of Section 1014 in a manner that is both unnatural and implausible. Defendants have not been able to identify any precedent for a Section 1014 violation like the one the Government alleges here—that is, arising from a covered lending or insurance institution's investment in securities.

The Government's Section 1014 claim fares even worse in light of the statute's legislative history. When Section 1014 was amended from time to time to supplement the list of covered institutions, Congressional deliberations repeatedly described it as a prohibition on false statements in loan applications and similar documents—not as a new safeguard against securities fraud. *See, e.g.*, H.R. Rep. No. 91–1457, at 21 (1970) (Section 1014 relates "to false statements in loan and credit applications"); S. Rep. No. 1078, 88th Cong., 2d Sess., at 5 (1964) (Section 1014 bars "false statements or willful overvaluations in connection with applications, loans, and the like"); *id.* at 4 ("Section 1014 is designed primarily to apply to borrowers from Federal agencies or federally chartered organizations.").

Similarly, when the courts have addressed the scope of Section 1014, their reasoning unmistakably indicated that the statute does not cover investment transactions. After extensively

surveying the history of Section 1014, the Supreme Court concluded in *Williams v. United States* that the statute applies only to "representations made in connection with conventional loan or related transactions." 458 U.S. 279, 288-89 (1982); *see also United States v. Devoll*, 39 F.3d 575, 578-79 (5th Cir. 1994) ("We hold today that section 1014 relates only to lending activities by financial institutions."); *Reass v. United States*, 99 F.2d 752, 755 (4th Cir. 1938) (explaining that predecessor statute "was passed to protect the Federal Home Loan Banks from fraudulent attempts to secure favorable action on applications for loans and like matters").

Thus, the text, history, and judicial interpretation of Section 1014 all compel the conclusion that investment transactions fall outside its scope. But even if this Court concluded that the Government's reading of the provision was plausible, that reading must be rejected in favor of a more narrow one. After all, Section 1014 is a criminal statute, made applicable to this civil case through FIRREA. *See United States v. Thompson/Center Arms Co.*, 504 U.S. 505, 517-18 (1992) (applying the rule of lenity to construction of a "tax statute . . . in a civil setting" because the conduct it regulates "may be subject to criminal sanction"); *Crandon v. United States*, 494 U.S. 152, 158 (1990) (where "the governing standard [for a civil action] is set forth in a criminal statute, it is appropriate to apply the rule of lenity in resolving any ambiguity in the ambit of the statute's coverage").

Thus, in interpreting Section 1014, rules of statutory construction applicable to criminal laws—including the "rule of lenity"—fully apply and require the Court to select the more narrow construction of its scope. As the Supreme Court held in *Williams*, "'when choice has to be made between two readings of [Section 1014][,] it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite.'"

458 U.S. at 290.  It is apparent that Congress did not unambiguously extend Section 1014 to covered institutions' investment transactions.  Therefore, this Court should dismiss Count Two.

### 2. Section 1014 Does Not Create Liability for Omissions.

To the extent Count Two relies on alleged omissions (Compl. ¶¶ 145, 151), it should be dismissed for the independent reason that the Bank's omissions are neither "false statement[s] or report[s]" nor an effort to "willfully overvalu[e] any land, property or security," and therefore cannot state a claim under Section 1014.

First, as the Sixth Circuit recently held in *United States v. Kurlemann*, the "false statements or reports" prong of Section 1014 does <u>not</u> create liability for "half-truths, material omissions or concealments."  --- F.3d ---, 2013 WL 5616757, at *3 (6th Cir. 2013) (quotations omitted).  In *Kurlemann*, the Sixth Circuit reversed a Section 1014 conviction that relied on non-disclosure of information: The defendant, who sold homes, had represented to banks issuing mortgages to buyers that the buyers had paid him substantial down payments.  *Id.* at *1-2.  What he did not disclose was that these down payments took the form of promissory notes and second mortgages.  *Id.*  The district court instructed the jury with respect to Section 1014 that "'[a] statement may be false . . . when it contains a half-truth or where it conceals a material fact.'" *Id.* at *2.

The jury convicted, but the Sixth Circuit reversed.  It held that "a false-statement prosecution under Section 1014 cannot generally be premised on implied representations.  It must turn on true-or-false representations later shown to be false."  *Id*. at *4.  The court drew a sharp distinction between the language of Section 1014 and the text of statutes that prohibit omissions, schemes, concealment, and fraud.  *Id*. at *5-6.  It also drew support from *Williams*, where the Supreme Court held that the act of depositing a bad check, even while knowingly

21

misleading, is not a false statement. *Williams*, 458 U.S. at 284-85. The reasoning of *Kurlemann* compels the dismissal of any Section 1014 allegations that rest on alleged omissions.

Second, this case does not involve conduct that "overvalues any . . . security," because the word "security" in Section 1014 plainly refers to collateral and not to a financial instrument. "Security," which appears twice in Section 1014, must mean the same thing in both places because, under a well-established canon of statutory interpretation, "words repeated within the same statutory section have an identical meaning in the several places employed." *Arnold v. E. Airlines, Inc.*, 712 F.2d 899, 904 (4th Cir. 1983). The other instance of "security"—in the phrase "acceptance, release, or substitution of security therefor"—unambiguously refers to collateral. A review of the antecedent statutes that were codified in Section 1014 confirms the same conclusion. *See* Federal Farm Loan Act § 31, 39 Stat. 360, 382 ("who shall willfully overvalue any land offered as security for loans under this Act"); 1923 Amendments to Federal Farm Loan Act § 211(c), 42 Stat. 1454, 1460 ("willfully overvalues any property offered as security for any such advance"); National Agricultural Credit Corporations §§ 209(h), 216(c), 42 Stat. 1461, 1468, 1472 (reading, respectively, "willfully violates any security by which an advance is secured" and "willfully overvalues any property offered as security for any such advance"); Farm Credit Act of 1935 § 21, 49 Stat. 313, 319 ("who shall willfully overvalue any land offered as security for loans under this Act").

Accordingly, all Section 1014 claims based on alleged omissions should be dismissed.

> **3.** **Any Claim Predicated on the Alleged Omission of Channel Information Should Be Dismissed Because the Bank Provided That Information to FHLB-SF and Wachovia.**

Separately, Count Two should be dismissed to the extent it alleges that the Bank failed to disclose in various transaction documents the proportion of the loan pool that was originated through the wholesale channel. (*See* Compl. ¶ 145a.) To state a Section 1014 claim, the

Government has to allege <u>plausibly</u> that this information was omitted "for the purpose[s] of influencing in any way the action of" FHLB-SF and Wachovia—the two covered lending institutions named in the Complaint. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (allegations must cross plausibility threshold to survive motion to dismiss). No such allegation can plausibly be made here, because the Complaint asserts that the Bank, in fact, <u>provided</u> FHLB-SF and Wachovia with electronic files disclosing the origination channel information for various mortgages contained in the BOAMS 2008-A securities. (Compl. ¶ 93; Exs. 1, 2; *see also SEC v. Bank of America, N.A.*, No. 13-cv-447 (W.D.N.C.) ECF No. 1, ¶ 59.) Having specifically pled these allegations, the Government should not be allowed to deny them. *See Allen*, 667 F.2d at 1166-67 (party "may properly be precluded as a matter of law from adopting a legal position in conflict with one" taken in a "related litigation" to "prevent the use of 'intentional self-contradiction . . . as a means of obtaining unfair advantage'" (alteration in original) (citation omitted)); *see also Nolte*, 390 F.3d 317 n.1 (taking notice of complaint in related SEC action). Having alleged that the Bank gave FHLB-SF and Wachovia channel information, the Government cannot <u>also</u> claim that the Bank withheld the same information from subsequently issued public documents "for the purposes of" duping FHLB-SF and Wachovia.

## III. The Claims Against BAC Should Be Dismissed

The Complaint's allegations against BAC—the ultimate parent of BANA, BOAMS, and (prior to its merger with Merrill Lynch, Pierce, Fenner & Smith Inc.) BAS (Compl. ¶¶ 19, 22)—are sparse, conclusory, and insufficient to state a claim. The entirety of the Government's allegations against BAC is that BAC "controlled" and "profited from" the transaction, and that BAC's corporate logo appeared on the BOAMS 2008-A prospectus. (*See* Compl. ¶¶ 13, 19, 22, 44.) BAC was neither a party to nor otherwise involved in the transaction; the Government does

not allege otherwise. Therefore, in order to state a claim against BAC for the alleged acts of its subsidiaries, the Government must plead a factual basis for piercing the corporate veil. *See, e.g.*, *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 349 (4th Cir. 1998) ("A corporate parent cannot be held liable for the acts of its subsidiary unless the corporate structure is a sham . . . ."). The Complaint contains no such allegations.

The high bar for veil piercing requires that the Government plead and prove that BAC (1) had "complete domination" over its subsidiaries; (2) used that control "to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights"; and (3) proximately caused the alleged injury or loss. *See Pfizer Inc. v. Synthon Holding, B.V.*, 386 F. Supp. 2d 666, 677 (M.D.N.C. 2005) (permitting veil piercing); *see also Broussard*, 155 F.3d at 349 ("A corporate parent cannot be held liable for the acts of its subsidiary unless the corporate structure is a sham and the subsidiary is nothing but a 'mere instrumentality' of the parent."). The Complaint fails even to hint at any possibility that the Bank's corporate structure was a sham, let alone allege facts with the specificity required by Rule 9(b). Conclusory allegations that BAC had "direct involvement or control" (Compl. ¶¶ 13, 19, 22), without more, are insufficient as a matter of law and require BAC's dismissal.[14]

---

[14]  Tellingly, the SEC did not name BAC as a defendant it its parallel complaint. *See SEC v. Bank of America, N.A.*, No. 13-cv-447 (W.D.N.C.) ECF No. 1.

## CONCLUSION

For the foregoing reasons, the Bank respectfully requests that the Court dismiss the Government's Complaint in its entirety with prejudice.

Dated: November 8, 2013

Respectfully submitted,

/s/ Kenneth D. Bell

MCGUIRE WOODS LLP

Kenneth D. Bell (N.C. Bar No. 10800)
201 North Tryon Street, Suite 3900
Charlotte, North Carolina 28202
(704) 373-8999 (tel)
KBell@McGuireWoods.com

SKADDEN ARPS SLATE MEAGHER
 & FLOM LLP

John K. Carroll (*pro hac vice* pending)
Boris Bershteyn (*pro hac vice* pending)
Four Times Square
New York, New York 10036-1811
(212) 735-3000 (tel)
John.Carroll@Skadden.com
Boris.Bershteyn@Skadden.com

Charles F. Smith (*pro hac vice* pending)
Amy L. Van Gelder (*pro hac vice* pending)
155 North Wacker Drive, Suite 2700
Chicago, Illinois 60606
(312) 407-0700 (tel)
Charles.Smith@Skadden.com
Amy.VanGelder@Skadden.com

*Counsel to Defendants Bank of America Corporation, Bank of America, N.A.,
Banc of America Mortgage Securities, Inc., and Merrill Lynch, Pierce,
Fenner & Smith, Inc. f/k/a Banc of America Securities LLC*