# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

### Civil Action No. 3:13-cv-446-MOC-DSC

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **BANK OF AMERICA CORPORATION,** | ) | Hon. Max Cogburn, Jr. |
| **BANK OF AMERICA, N.A., BANC OF** | ) | |
| **AMERICA MORTGAGE SECURITIES,** | ) | |
| **INC., and MERRILL LYNCH, PIERCE,** | ) | |
| **FENNER & SMITH, INC. f/k/a BANC OF** | ) | |
| **AMERICA SECURITIES LLC** | ) | |
| | ) | |
| **Defendants**. | ) | |
| ———————————————————— | ) | |

## MEMORANDUM OF LAW OF THE UNITED STATES IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS

ANNE M. TOMPKINS
UNITED STATES ATTORNEY
227 West Trade Street, Suite 1650
Charlotte, NC 28202
Tel. 704.344.6222
Fax 704.344.6629

DANIEL S. RYAN
MARK T. ODULIO
Assistant United States Attorneys

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL BACKGROUND ...................................................................................................... 3

ARGUMENT ............................................................................................................................... 5

I.      THE COMPLAINT STATES ACTIONABLE FIRREA CLAIMS BASED ON
DEFENDANTS' VIOLATIONS OF § 1001 AND 1014 ................................................ 5

    A.   The Securities Laws Do Not Preclude FIRREA Claims. ................................... 6

    B.   Defendants' Material Omissions are Actionable Under § 1014 ...................... 10

    C.   Defendants Violated § 1001 by Filing Offering Documents with the SEC Containing
False Statements and Omitting to State Other Material Information and by Providing
Them to FHLB-San Francisco. .................................................................... 13

    1.   Defendants' Misstatements in SEC Filings are Material. .............................. 13

    2.   Defendants' Misstatements to FHLB-San Francisco Violate § 1001. ........... 18

    3.   Defendants' Material Omissions are Actionable Under § 1001. .................. 20

II.     DEFENDANTS ACTED KNOWINGLY AND WILLFULLY ................................... 21

i

# TABLE OF AUTHORITIES

Page

**CASES**

*America Int'l Group v. Bank of America Corp.*
943 F. Supp. 2d 1035 (C.D. Cal. May 6, 2013) ............................................................2

*Anderson News, L.L.C. v. American Media, Inc.*
680 F.3d 162 (2d Cir. 2012).............................................................................12

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) .................................................................................6, 14

*Bailey v. United States*
516 U.S. 137 (1995) ......................................................................................8

*Bertelli v. Wells Fargo Bank, N.A.*
No. 11-cv-179, 2013 WL5460179 (W.D.N.C. 2013) (Sept. 30, 2013) ........................................22

*Brogan v. United States*
522 U.S. 398 (1998) ......................................................................................9

*Bruesewitz v. Wyeth LLC*
131 S. Ct. 1068 (2011).....................................................................................8

*Bryson v. United States*
396 U.S. 64 (1969).......................................................................................15

*Dunn v. Borta*
369 F.3d 421 (4th Cir. 2004) ..............................................................................14

*FHFA v. UBS Americas, Inc.*
858 F. Supp. 2d 306 (S.D.N.Y. 2012).....................................................................2, 25

*Harrison v. Westinghouse Savannah River Co.*
176 F.3d 776 (4th Cir. 1999) ..............................................................................22

*In re MF Global Holdings Secs. Litig.*
2013 WL5996426 (S.D.N.Y.) (Nov. 12, 2013) ...............................................................25

ii

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*
513 F.3d 702 (7th Cir. 2008) ........................................................................22

*Matrix Capital Mgmt. Fund, L.P. v. BearingPoint, Inc.*
576 F.3d 172 (4th Cir. 2009) ........................................................................22

*Matrixx Initiatives, Inc. v. Siracusano*
131 S. Ct. 1309 (2011) ...........................................................................13, 14

*Mylan Labs., Inc. v. Matakara*
7 F.3d 1130 (4th Cir. 1993) ............................................................................6

*Nieman v. Duke Energy Corp.*
No. 12-cv-456, 2013 WL4004274 (W.D.N.C. 2013) ...............................6, 23

*Nolte v. Capital One Fin.Corp.*
390 F.3d 311 (4th Cir. 2004) .......................................................................2, 3

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*
551 U.S. 308 (2007) .............................................................................23, 25

*United States v. Abdelshafi*
592 F.3d 602 (4th Cir. 2010) ..........................................................................9

*United States v. Agne*
214 F.3d 47 (1st Cir. 2000) .............................................................................9

*United States v. Bailey*
734 F.2d 296 (1984)......................................................................................16

*United States v. Bank of N.Y. Mellon*
 941 F. Supp. 2d 438 (S.D.N.Y. Apr. 24, 2013) ............................2, 3, 7, 23

*United States v. Batchelder*
442 U.S. 114 (1979).......................................................................................6

*United States v. Berger*
473 F.3d 1080 (9th Cir. 2007) ......................................................................16

*United States v. Bilzerian*
926 F.2d 1285 (2d Cir. 1991) ...................................................................7, 15

*United States v. Bilzerian*
127 F.3d 237 (2d. Cir. 1997).........................................................................15

iii

*United States v. Boren*
278 F.3d 911 (9th Cir. 2002) ..................................................................................9

*United States v. Brewer*
528 F.2d 492 (4th Cir. 1975) ..................................................................................7

*United States v. Calhoon*
97 F.3d 518 (11th Cir. 1996) ................................................................................20

*United States v. Concemi*
957 F.2d 942 (1st Cir. 1992) ................................................................................10

*United States v. Copus*
110 F.3d 1529 (10th Cir. 1997) ............................................................................10

*United States v. Countrywide Fin. Corp.*
2013 WL4437232 (S.D.N.Y. Aug 16, 2013) ..........................................................2

*United States v. Dale*
991 F.2d 819 (D.C. Cir. 1993) ..............................................................................20

*United States v. Davis*
8 F.3d 923 (2d Cir. 1993) .....................................................................................19

*United States v. Deutsch*
2012 WL1623376 (May 8, 2012 S.D.W.V.) ...........................................................11

*United States v. Devoll*
39 F.3d, 575 (5th Cir. 1994) .................................................................................10

*United States v. Fields*
592 F.2d 638 (2d. Cir. 1978) ................................................................................15

*United States v. Gaudin*
515 U.S. 506 (1995) ..............................................................................................14

*United States v. Greenberg*
1988 WL21229 (4th Cir. 1988) (unpublished) .....................................................24

*United States v. Haddock*
956 F.2d 1534 (10th Cir. 1992) ............................................................................11

*United States v. Herring*
916 F.2d 1543 (11th Cir. 1990) ............................................................................19

iv

*United States v. Hester*
880 F.2d 799 (4th Cir. 1989) ..................................................................24

*United States v. Ismail*
97 F.3d 50 (4th Cir. 1996) ...............................................................17, 18

*United States v. Jackson*
608 F.3d 193 (4th Cir. 2010) ..................................................................19

*United States v. John Doe, Inc. I*
481 U.S. 102 (1987) ...................................................................................6

*United States v. King*
660 F.3d 1071 (9th Cir. 2010) ................................................................19

*United States v. Krilich*
159 F.3d 1020 (7th Cir. 1998) ..................................................................9

*United States v. Kurlemann*
736 F.3d 439 (6th Cir. 2013) ..................................................................11

*United States v. Kwiat*
817 F.2d 440 (7th Cir. 1987) .......................................................16, 17, 18

*United States v. Lang*
766 F. Supp. 389 (D. Md. 1991) .........................................................7, 16

*United States v. Littleton*
76 F.3d 614 (4th Cir. 1996) .............................................................17, 18

*United States v. London*
550 F.2d 206 (5th Cir. 1977) ..................................................................21

*United States v. McGraw-Hill Cos., Inc.*
2013 WL3762259 (C.D. Cal. Jul. 16, 2013) ...............................................7

*United States v. Miller*
676 F.2d 359 (9th Cir. 1982) ..................................................................10

*United States v. Moore*
446 F.3d 671 (7th Cir. 2006) ..................................................................20

*United States v. Mubayyid*
658 F.3d 35 (1st Cir. 2011) ....................................................................20

v

*United States v. Rapoport*
545 F.2d 802 (2d Cir. 1976)..................................................................................................11

*United States v. Rodgers*
466 U.S. 475 (1984)......................................................................................................9, 19

*United States v. Ryan-Webster*
353 F.3d 353 (4th Cir. 2003) ..............................................................................................7

*United States v. Smith*
29 F.3d 914 (4th Cir. 1994) ...............................................................................................10

*United States v. Stoddart*
574 F.2d 1050 (10th Cir. 1978) ...........................................................................................9

*United States v. Sturman*
1998 WL524906 (S.D.N.Y. Aug. 20, 1998)..........................................................................11

*United States v. Swaim*
757 F.2d 1530 (5th Cir. 1985) ...........................................................................................21

*United States v. Taylor*
582 F.3d 558 (5th Cir. 2009) .............................................................................................19

*United States v. Trice*
823 F.2d 80 (5th Cir. 1987) ...............................................................................................10

*United States v. Turner*
22 Fed. Appx. 404 (6th Cir. 2001)........................................................................... 15-16, 19

*United States v. Wade*
266 F.3d 574 (6th Cir. 2001) ..........................................................................................9, 10

*United States v. Wells*
63 F.3d 745 (8th Cir. 1995) *vacated on other grounds* 519 U.S. 482 (1997)..............................10

*United States v. Wells Fargo Bank, N.A.*
2013 WL5312564 (S.D.N.Y. Sept. 24, 2013)......................................................................2, 22

*United States v. West*
666 F.2d 16 (2d Cir. 1981)..................................................................................................24

*United States v. Yoo*
833 F.2d 488 (3d Cir. 1987)..................................................................................................9

vi

*Walters v. Metropolitan Ed. Enterprises, Inc.*
519 U.S. 202 (1997)..................................................................................................10

*Williams v. United States*
458 U.S. 279 (1982)....................................................................................................9

**STATUTES**

12 U.S.C. § 1833a.................................................................................................1, 5

18 U.S.C. §§ 1001 ........................................................................................... passim

18 U.S.C. § 1014 .............................................................................................. passim

18 U.S.C. § 1503 ......................................................................................................17

18 U.S.C. § 1623 ......................................................................................................17

12 U.S.C. § 1421 ......................................................................................................19

Private Securities Litigation Reform act of 1995 ....................................................21

**RULES**

Federal Rules of Civil Procedure 41(a)(1)(A) ...........................................................1

Federal Rules of Civil Procedure 12(b)(6).................................................6, 12, 23

Federal Rules of Civil Procedure 9(b) ......................................................13, 22, 23

**REGULATIONS**

12 C.F.R § 905.4 (2008) ..........................................................................................19

Plaintiff the United States of America respectfully submits this memorandum of law in opposition to the motion filed by Defendants Bank of America, National Association ("BOA-Bank"), Banc of America Mortgage Securities, Inc. ("BOA-Mortgage") and Banc of America Securities LLC now known as Merrill Lynch, Pierce, Fenner & Smith, Inc. ("BOA-Securities") (collectively, "Defendants") to dismiss the Government's Complaint.[1]

## PRELIMINARY STATEMENT

In late 2007/early 2008, after being confronted with mounting evidence that BOA-Bank's origination practices and mortgage performance had deteriorated significantly, Defendants unloaded over $850 million in purportedly prime residential mortgage-backed securities ("RMBS") on five investors by making a number of lies and concealing other material information. Defendants' Motion does not seriously contest the sufficiency of the Complaint's allegations concerning the basics of this fraudulent conduct. Instead, Defendants' primary protest against the Government's allegations is that they are found in a civil FIRREA (12 U.S.C. § 1833a) Complaint rather than a securities fraud indictment. Putting aside whether Defendants should be criminally indicted for their fraudulent conduct, FIRREA's civil penalty provisions were intended to be (and routinely have been) construed broadly to punish those who, like Defendants, engaged in conduct that jeopardizes federally insured financial institutions. In fact, one of BOA-Corp.'s counterparts, JPMorgan Chase & Co., recently agreed to pay a $2 billion civil penalty to resolve the Department of Justice's FIRREA claims arising out of its "packaging,

---

[1] Bank of America Corporation also moved to dismiss the claims against it in the Complaint. The Government consents to dismissing BOA-Corp. without prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(A).

marketing, sale and issuance" of RMBS.[2]  Defendants' hyperbolic arguments about applying the FIRREA predicates 18 U.S.C. §§ 1001 and 1014 to their fraudulent conduct ring hollow and are reminiscent of similar arguments previously raised (and rejected) in cases against BOA-Corp., BOA-Bank and other banks.[3]  None of these arguments fare any better here.  Applying FIRREA and its predicate criminal statutes, including 18 U.S.C. §§ 1001 and 1014, is warranted where a fraud was *committed by* and *targeted* federally insured banks and played a direct role in the recent financial crisis.  As Defendants concede, Congress enacted FIRREA to "crackdown on the mismanagement of financial institutions" (Motion at 2).  This includes the type of mismanagement engaged in by Defendants – *i.e.,* putting their business and shareholders at risk by defrauding other financial institutions.

Similarly deficient is Defendants' argument that the Complaint fails to plead that they acted knowingly or willfully.  Defendants acknowledge the deference to be given to the Complaint's allegations, but they ignore Supreme Court holdings by improperly raising numerous factual disputes not properly considered when reviewing a motion to dismiss, and

---

[2] *See www.justice.gov/opa/pr/2013/November/13-ag-1237.html.*   The Court can take judicial notice of matters of public record.  *See Nolte v. Capital One Fin. Corp.*, 390 F.3d 311, 317 n.1 (4th Cir. 2004) (indisputable facts, such as the fact that a complaint was filed, are properly susceptible to judicial notice).

[3] *See, e.g., United States v. Countrywide Fin. Corp.*, 2013 WL4437232, *5-6 (S.D.N.Y. Aug. 16, 2013) (rejecting BOA-Corp. and BOA-Bank's "endlessly complicated" and "utterly unconvincing" arguments that the Government's interpretation of the breadth of FIRREA was "bizarre," "backward," "unnatural," "limitless," "breathtakingly broad," "contrary to legislative history," and would disrupt Congress' carefully crafted regulatory framework); *United States v. Wells Fargo Bank, N.A.*, 2013 WL5312564, *19 (S.D.N.Y. Sept. 24, 2013) (rejecting argument that corporate scienter had to be pled with particularity); *United States v. Bank of N.Y. Mellon*, 941 F. Supp. 2d 438, 443 (S.D.N.Y. Apr. 24, 2013) (complaint sufficiently alleged FIRREA claims based upon mail and wire fraud predicates related to sale of securities); *FHFA v. UBS Americas., Inc.*, 858 F. Supp. 2d 306, 332 (S.D.N.Y. 2012) (rejecting argument that boilerplate disclosures about general compliance with underwriting standards rendered specific false statements unactionable); *Am. Int'l Group v. Bank of Am. Corp.*, 943 F. Supp. 2d 1035, 1059 (C.D. Cal. May 6, 2013) (rejecting argument that financial crisis, not defendants' fraud, caused losses).

2

asking the Court to reject all inferences that could be drawn from the Complaint's allegations.[4] The Complaint is replete with detailed factual allegations that Defendants knowingly and willfully misled investors, which Defendants largely ignore in their Motion. To the extent that they address any of those allegations, Defendants concede their sufficiency but claim that they are not actionable because Defendants made adequate disclosures to investors. Defendants mischaracterize those purported disclosures, but, in any event, they are general boilerplate warnings that cannot save Defendants from their specific false statements and omissions.

Defendants' argument that their selective disclosure of preliminary channel information to representatives of FHLB-San Francisco and Wachovia precludes 18 U.S.C. § 1014 liability is misleading because (1) Defendants never provided this information to FFBIC, one of the victims; and (2) the information provided to FHLB-San Francisco and Wachovia was preliminary and was expressly disavowed both by the transmitting emails and the offering documents filed with the SEC more than a month after the emails cited by Defendants.

In short, the Government has pled its claims against Defendants sufficiently. Thus, Defendants' Motion must be denied.

## FACTUAL BACKGROUND

As more fully set forth in the Complaint, from 2006 through 2007, Defendants originated, securitized and sold to investors hundreds of billions of dollars in home loans. (Cmplt. ¶ 34). In the process, BOA-Corp., which touted BOA-Bank as "the nation's premier lender," feasted on a stream of revenues generated by its subsidiaries BOA-Bank, BOA-Securities, and BOA-

---

[4] Defendants improperly attempt to create factual disputes based upon matters outside of the Complaint or otherwise not properly considered by the Court when considering a motion to dismiss, e.g., Motion at 4, 5 n.3, 7. *See Bank of N.Y. Mellon*, 941 F. Supp. 2d at 466 & n.164; *Nolte*, 390 F.3d at 317 n.1.

3

Mortgage.  (Cmplt. ¶¶ 33, 34, 43).  But by late 2007, senior employees and management of Defendants were in deep discussions about troubling data showing that a significant percentage of the mortgages originated by BOA-Bank failed to materially comply with its underwriting standards.  (Cmplt. ¶ 61).  Worse, this data showed that these underwriting problems were increasing at an alarming rate.  (Cmplt. ¶ 67).  This data had serious ramifications because the quality of BOA-Bank's underwriting process was a critical factor for investors deciding to purchase RMBS.  (Cmplt. ¶ 31).  Simultaneously, these same senior employees of Defendants and others began noticing a troubling trend in the performance of mortgages originated through BOA-Bank's Wholesale Channel and of RMBS backed by such mortgages.  (Cmplt. ¶¶ 76-98).

As Defendants' senior employees and management grappled with this troubling data, these same personnel began working on what would become Defendants' last RMBS – the BOAMS 2008-A securitization.  Despite being armed with this disturbing knowledge, they chose (contrary to BOA-Securities policies and procedures and standard industry practice and over the objection of a senior BOA-Securities employee) to forego due diligence on BOAMS 2008-A, apparently afraid of what they might find.  (Cmplt. ¶¶ 108-125).  Compounding this fraud, these same people, who were simultaneously preparing Offering Documents and Preliminary Marketing Materials[5] for the BOAMS 2008-A securitization, chose not to alter any of the standard boilerplate disclosures included therein or alert investors to any of the troubling news about the quality and performance of the mortgages backing the Certificates. (Cmplt. ¶¶ 5, 8-11).  Thus, the Offering Documents, which were filed with the U.S. Securities and Exchange

[5]"Offering Documents" means the shelf registration statement, free writing prospectuses, prospectus supplement, pooling and servicing agreement and underwriting agreement and "Preliminary Marketing Materials" means preliminary loan tapes, stratification tables, and similar communications. (Cmplt. ¶ 5).

Commission ("SEC") and used by investors to gauge the quality of all aspects of the BOAMS 2008-A Certificates, fraudulently misstated and otherwise omitted material information about the quality of the $855 million in mortgages backing the securitization. (*Id.*). As a result, the financial institutions and other investors that purchased BOAMS 2008-A Certificates were falsely led to believe that they were purchasing high quality prime securities. This was not the case, as evidenced by mounting defaults and principal losses incurred to date on the mortgages backing those securities. (Cmplt. ¶ 12). Collectively, these mortgages are projected to suffer over $120 million in principal losses alone, which is light years away from the $4.3 million in losses investors were originally told to anticipate. (*Id.*).

## ARGUMENT

### I.   THE COMPLAINT STATES ACTIONABLE FIRREA CLAIMS BASED ON DEFENDANTS' VIOLATIONS OF § 1001 AND 1014

The Complaint alleges that Defendants knowingly and willfully defrauded investors in the BOAMS 2008-A Certificates through a series of material false statements and omissions and that this conduct violated 18 U.S.C. § 1001 and § 1014. The Complaint further alleges that these predicate violations form the bases of claims under FIRREA, 12 U.S.C. § 1833a. Defendants volley several attacks at the sufficiency of the Complaint, each of which is unavailing. Their primary argument that § 1001 and § 1014 were not "designed to provide securities investors with a remedy for fraud," (Motion at 8) ignores the plain and unambiguous language of § 1014, and, regarding § 1001, erroneously claims that their false statements and omissions were not material to the SEC and were not within the jurisdiction of a government agency with respect to FHLB-

5

San Francisco.[6]  Similarly, Defendants' argument that their material omissions did not violate either § 1001 or § 1014 is based on the faulty premise that concealing information they were required to disclose does not constitute a "trick, scheme, or device" under § 1001 or a false statement or overvaluation of a security intended to influence a financial institution under § 1014.  All of these arguments fail for the reasons set forth below.[7]

### A.  The Securities Laws Do Not Preclude FIRREA Claims.

The Government has nearly unfettered discretion when making charging decisions concerning defendants, like those here, whose conduct violates multiple statutes.  That discretion necessarily includes the freedom to choose between civil and/or criminal charges.  *Cf.  United States v. John Doe, Inc. I*, 481 U.S. 102 (1987) (after conducting grand jury investigation, Government decided to bring civil, not criminal, charges).  The Supreme Court "has long recognized that when an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants." *United States v. Batchelder*, 442 U.S. 114, 123-24 (1979).  In *Batchelder*, the Supreme Court held that the fact that two distinct statutes proscribe similar conduct but prescribe different penalties does not compel a conclusion that one statute limits or affects the enforcement of the

---

[6] A more than insubstantial portion of Defendants' Motion is dedicated to comparing the Complaint's allegations to those made by the SEC in its separate action against Defendants (Case No. 13-cv-447).  Only the Attorney General is authorized to bring FIRREA claims, or any other claims, based upon violations § 1001 and § 1014.  Thus, the SEC's decisions as to what, if any, allegations to make against Defendants are irrelevant here.

[7] Under Rule 12(b)(6), "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff."  *Mylan Labs., Inc. v. Matakari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *accord Nieman v. Duke Energy Corp.*, No. 3:12-cv-456, 2013 WL4004274, *16-17 (W.D.N.C. 2013) (Cayer, J.).  A complaint's "factual content" and "reasonable inference[s]" from that content need only "plausibly suggest an entitlement of relief" in order to state a claim properly.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).

other. *Id.* at 125 ("defendant has no constitutional right to elect which of two applicable federal statutes shall be the basis of his indictment and prosecution"). The Fourth Circuit repeatedly has held that when "criminal conduct contravenes more than one statute, it is within the prosecutor's discretion to choose the … charge." *United States v. Ryan-Webster*, 353 F.3d 353, 361 & n.14 (4th Cir. 2003); *see also United States v. Brewer*, 528 F.2d 492, 498 (4th Cir. 1975).

The Second Circuit's opinion in *United States v. Bilzerian*, 926 F.2d 1285 (1991), is particularly instructive. In that case, the defendant Bilzerian was convicted of securities fraud, conspiracy and false statement charges for the same underlying conduct. *Id.* at 1290-1291. In affirming his convictions, the Second Circuit rejected Bilzerian's claim (like that of Defendants here) that the Government's decision to prosecute him under § 1001 was "an unprecedented attempt" to circumvent Congress' purpose in enacting the complicated statutory framework regulating securities transactions. *Id.* at 1299-1300; *see also United States v. McGraw-Hill Cos., Inc.*, 2013 WL3762259 (C.D. Cal. Jul. 16, 2013) (denying motion to dismiss Government's FIRREA claims against S&P based on predicate acts of mail, wire, and bank fraud concerning credit ratings); *Bank of N.Y. Mellon*, 941 F. Supp. 2d 438 (denying motion to dismiss Government's FIRREA claims based on predicate acts of mail and wire fraud concerning securities transactions); *United States v. Lang*, 766 F. Supp. 389, 393 (D. Md. 1991) (citing *Bilzerian*). These cases make clear that Defendants' general complaints about the Government's charging decisions have no merit and should be rejected.

Defendants' more specific argument regarding § 1014 also should be rejected because it runs afoul of well-settled Supreme Court and Fourth Circuit precedent concerning statutory interpretation and several other Courts of Appeals regarding the scope of § 1014. The plain text

7

of § 1014 sets forth that "*whoever* knowingly makes any false statement or report, or willfully overvalues any … security, for the purpose of influencing *in any way* the action of" a federally insured bank or Federal Home Loan Bank "upon *any* … purchase" is subject to criminal liability. 18 U.S.C. § 1014 (emphasis added).  Defendants do not dispute that the Complaint alleges that they made false statements and/or reports and overvalued the BOAMS 2008-A Certificates for the purposes of influencing FHLB-San Francisco, Wachovia, and FFBIC in connection with their purchase of securities.  (*See, e.g.,* Cmplt. ¶¶ 150-154).  Undeterred by the obvious application of the unambiguous statutory language (and ignoring the legion of cases holding that this should end the inquiry[8]), Defendants nevertheless claim they cannot be liable for violating § 1014 because their false statements and omissions to FHLB-San Francisco, Wachovia, and FFBIC did not relate to "core banking activity."  Defendants do not attempt to define what constitutes core banking activity, but they assert that it does not include any activity relating to securities.[9]  This position is disingenuous given that BOA-Bank holds more than $282 billion worth of securities on its own balance sheet.[10]  Certainly BOA-Bank's officers (and regulators) would be surprised to learn that it has purchased nearly $300 billion worth of securities that are not related to its core banking activity.

In any event, Defendants' attempt to rewrite § 1014 so that it is limited only to matters concerning core banking activity runs counter to the well-reasoned holdings of at least three

---

[8] *See, e.g., Brusewitz v. Wyeth LLC,* 131 S. Ct. 1068, 1081 (2011) (where only one interpretation is supported by text and structure of statute, there is "no need" to rely on legislative history).

[9] In addition, Defendants offer no explanation for what "purchase" means in the context of "core banking activities" other than that it does not include office supplies.  Defendants' attempt to read "purchase" out of § 1014 must be rejected.  *See Bailey v. United States,* 516 U.S. 137, 145 (1995) (we must assume "that Congress intended each of its terms to have meaning").

[10] *See* Bank of America, N.A. Sept. 30, 2013 FFIEC/TFR Call Report, pg. 12, available at https://cdr.ffiec.gov/Public/ViewFacsimileDirect.aspx?ds=call&idType=fdiccert&id=3510&date=09302013.

8

Courts of Appeals.  In *United States v. Krilich*, 159 F.3d 1020, 1028 (7th Cir. 1998), the Seventh Circuit rejected the argument that § 1014 "applies only to statements made to obtain loans or other extensions of credit."  The Court explained: "§ 1014 must cover statements that are not designed to influence an extension of credit – indeed, [it] must cover statements that have nothing to do with the payment of money." *Id.* The Court based its holding on the "straightforward and broad" text of the statute and noted that since § 1014 also prohibited false statements to government regulators, it would be illogical to limit it to banking transactions.  *Id.* Finally, the Court expressly rejected the arguments (like those of Defendants here) based upon "doubt resolvers such as the Rule of Lenity" and "Legislative history" because "the statute is not ambiguous…it is [simply] comprehensive." *Id.* (citing *Brogan v. United States*, 522 U.S. 398, 403 (1998)).[11]  Both the Sixth and Ninth Circuits have explicitly adopted the Seventh Circuit's reasoning.[12] *See United States v. Boren*, 278 F.3d 911, 915 (9th Cir. 2002) (distinguishing *Williams v. United States*, 458 U.S. 279 (1982) because it "did not purport to answer the question posed in this case – whether a false statement must relate to an extension of credit."); *United States v. Wade*, 266 F.3d 574, 579-80 (6th Cir. 2001) (rejecting argument that false statement need be in connection with establishment of debtor/creditor relationship because language of § 1014 "is unambiguous and broad"*).*  In *Wade*, the Sixth Circuit explained that adopting defendant's proposed narrowing of § 1014 would impermissibly render the term "any" in the

---

[11] *See also United States v. Abdelshafi*, 592 F.3d 602, 609 (4th Cir. 2010) ("Resolution of the pros and cons of whether a statute should sweep broadly or narrowly is for Congress.") (quoting *United States v. Rodgers*, 466 U.S. 475, 484 (1984).

[12] In addition, the First, Third and Tenth Circuits have rejected defendants' attempts to narrow the application of § 1014 to only certain types of transactions.  *See United States v. Agne*, 214 F.3d 47, 54 (1st Cir. 2000); *United States v. Yoo*, 833 F.2d 488, 490 (3rd Cir. 1987); *United States v. Stoddart*, 574 F.2d 1050, 1053 (10th Cir. 1978).

9

statute unnecessary. 266 F.3d at 580 ("[W]e determine that had Congress intended 18 U.S.C. § 1014 to only apply to applications seeking to establish a debtor/creditor relationship it would have used such terms and not used the word 'any' in the statute.").[13]

Although the Fourth Circuit has not addressed the question directly, in *United States v. Smith*, 29 F.3d 914, 917 (4th Cir. 1994), it held that § 1014 should be read literally because "we can add nothing that will assist in understanding the meaning of the statute." (interpreting *Williams* as standing for proposition that § 1014 "require only that the false statement be made 'for purpose of influencing in any way the action' of a bank"). As set forth above, Defendants' conduct fits squarely within the literal application of § 1014.[14]

### B. Defendants' Material Omissions are Actionable Under § 1014.

Defendants failed to disclose material information in the Offering Documents and Preliminary Marketing Materials they provided to FHLB-San Francisco, Wachovia, and FFBIC. (*See* Cmplt. ¶¶ 2, 5, 6, 7, 51, 52, 69, 85, 91, 96, 102, 106, 145, 151). Ignoring the holdings of numerous Courts of Appeals applying § 1014 to omissions,[15] Defendants mistakenly assert that

---

[13] The Supreme Court has made clear that "in the absence of an indication to the contrary, words in a statute are assumed to bear their ordinary, contemporary, common meaning." *Walters v. Metropolitan Ed. Enterprises, Inc.*, 519 U.S. 202 (1997) (quotations omitted).

[14] The only case cited by Defendants suggesting a narrow interpretation of § 1014 is *United States v. Devoll*, 39 F.3d 575, 578-79 (5th Cir. 1994). However, in *Devoll*, the Court's statements were clearly *dicta* as it expressly found the charged conduct "was intended to influence the institutions in their lending activities." *Id.* Thus, it did not need to define the scope of § 1014 in reaching its holding. Not surprisingly, the opinion is devoid of any explanation or analysis supporting a narrow reading of § 1014.

[15] *See United States v. Copus*, 110 F.3d 1529, 1535 (10th Cir. 1997) (creating false impression by withholding information); *United States v. Wells*, 63 F.3d 745 (8th Cir. 1995) *vacated on other grounds* 519 U.S. 482 (1997); *United States v. Concemi*, 957 F.2d 942, 950 (1st Cir. 1992) (omitting information on closing statements); *United States v. Trice*, 823 F.2d 80, 86 (5th Cir. 1987) ("false statement or report … can include the failure to disclose material information needed to avoid deception"); *United States v. Miller*, 676 F.2d 359, 363-64 (9th Cir. 1982) (literally true statements that did not reveal straw purchasers

10

any omissions (including theirs) are inactionable under § 1014 as a matter of law. This is incorrect. Recently, in *United States v. Deutsch*, 2012 WL1623376, *1 (May 8, 2012 S.D.W.V.), the district court addressed this question squarely and concluded based upon the weight of the case law that "an omission can be a false statement under § 1014." A similar result was reached in *United States v. Sturman*, 1998 WL524906, *1 (S.D.N.Y. Aug. 20, 1998) ("There is no support for defendants' claim that omissions do not constitute false statements under § 1014.").

Defendants cite only one case supporting their attempt to limit § 1014, *United States v. Kurlemann*, 736 F.3d 439 (6th Cir. 2013). This case is clearly an outlier, as it is contrary to the holdings of the First, Second, Fifth, Eighth, Ninth and Tenth Circuits. Regardless, Defendants' reliance on *Kurlemann* is misplaced because it is both factually and legally distinguishable from this case. Unlike Defendants, Kurlemann was not required by law, specific request, or duty to disclose the omitted information. *Id.* at 449. The *Kurlemann* Court noted that had the defendant been so obliged, it may have reached a different result. *Id.* (citing *United States v. Haddock*, 956 F.2d 1534, 1550 (10th Cir. 1992)).[16] Because Defendants were under a legal obligation to disclose the information they omitted from the Offering Documents and Preliminary Marketing Materials (Cmplt. ¶¶ 45, 51, 69, 85, 91, 96, 102, 106, 125, 145), their omissions violated § 1014 and it is unnecessary for this Court to decide whether the Fourth Circuit would follow the clear majority of other Circuits to consider the scope of § 1014.

Regarding one of the more than seventeen omissions identified in the Complaint (Cmplt. ¶ 145(a)), Defendants ask this Court to interpret two emails they attach to their Motion in order

---

used borrowed funds as down payments); *United States v. Rapoport*, 545 F.2d 802, 806-07 (2d Cir. 1976) (omissions from loan applications).

[16] *See also* discussion at I.C.3 *infra.*

11

to conclude that they did not intend that omission to influence FHLB-San Francisco or Wachovia as required by § 1014.  Such a factual determination is not proper on a motion to dismiss.  *See Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) ("The choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion.").  Even if it were, the factual finding Defendants request is unsupported.  The preliminary channel data Defendants provided to FHLB-San Francisco and Wachovia was marked preliminary and was expressly disavowed both by the transmitting emails and the Offering Documents filed with the SEC more than a month after the emails cited by Defendants.  (*See* Motion at Exs. 1 & 2 ("we do not represent that this information is complete or accurate, and it should therefore not be relied upon as such." and "Information in these materials is current as of the date appearing on the material only."), and Ex. 3, pg. 120 ("You should rely **only** on the information provided in this prospectus and the accompanying prospectus supplement…") (emphasis added)).  Given these express warnings, the Court cannot find as a matter of law that Defendants did not intend to influence FHLB-San Francisco and Wachovia when it failed to provide them with any channel information (or disclosures relating to the heightened risks associated with the high proportion of wholesale mortgages in the collateral pool) in the Offering Documents sent a month after the emails. Finally, even if the Court determined as a matter of law that Defendants did not intend to influence FHLB-San Francisco and Wachovia by omitting to include final channel information, the Complaint still alleges a violation of § 1014 by Defendants' failure to provide ***any*** channel information to  victim FFBIC.  (Cmplt. ¶¶ 91, 93).

12

### C. Defendants Violated § 1001 by Filing Offering Documents with the SEC Containing False Statements and Omitting to State Other Material Information and by Providing Them to FHLB-San Francisco.

The Complaint alleges that the Defendants violated § 1001 by filing the Offering Documents with the SEC because they contained material false statements and failed to disclose other material information concerning the quality of the mortgages collateralizing the BOAMS 2008-A securitization, how BOA-Bank originated those mortgages, and the likelihood that the borrowers behind those mortgages would make their scheduled payments in a timely fashion. (*See, e.g.*, Cmplt. ¶¶ 2, 5, 15, 38, 39, 40, 44, 59, 76, 142-148). Defendants similarly made false statements to FHLB-San Francisco by directly providing it with the Offering Documents and the Preliminary Marketing Materials, which also contained material misstatements and omissions. (*See, e.g.,* Cmplt. ¶¶ 5, 59, 127, 143). Defendants' contention that their false statements and omissions were not capable of influencing the SEC, i.e. they were "not material," is factually and legally incorrect and is belied by the fact that the SEC filed an enforcement action against Defendants based upon the same filings. Similarly deficient is Defendants' claim that although FHLB-San Francisco is overseen by the federal government, its business operations are not within the jurisdiction of a government agency.

#### 1. Defendants' Misstatements in SEC Filings are Material.[17]

As an initial matter, Defendants erroneously claim, without any explanation or legal support, that the heightened pleading standards of Fed. R. Civ. P. 9(b) apply to the Complaint's allegations of materiality. This is not the case. In *Matrixx Initiatives, Inc. v. Siracusano*, 131 S.

---

[17] Defendants do not contest (nor could they plausibly do so) that their misstatements and omissions to FHLB-San Francisco in the Offering Documents and Preliminary Marketing Materials were material.

13

Ct. 1309, 1322 & n.12 (2011), the Supreme Court rejected that very argument and instead analyzed the Complaint's allegations of materiality solely to determine whether they were "plausible" under the standard set forth in *Twombly*, 550 U.S. at 570. Defendants also ignore the well-settled principle that questions concerning materiality should be reserved for the jury because they are inherently a "fact-specific inquiry." *See Matrixx Initiatives,* 131 S. Ct. at 1323 (assuming complaint's facts to be true, district court erred when it dismissed civil complaint for failing to allege false statements were material); *United States v. Gaudin*, 515 U.S. 506, 512 (1995) (for purposes of § 1001, materiality of false statements is a question for the jury to determine); *Dunn v. Borta*, 369 F.3d 421, 427 (4th Cir. 2004) ("the materiality of a statement or omission is a question of fact that should normally be left to a jury rather than resolved by the court on a motion to dismiss.") (internal quotation omitted).

Regardless, Defendants miss the mark in claiming that the Complaint fails to plead that their misstatements and omissions were material to the SEC. Defendants concede, as they must, that the Complaint contains ample allegations that the Offering Documents they filed with the SEC contained misstatements and omissions. (Motion at 12 (citing Cmplt. ¶¶ 2, 5, 15, 22, 38, 39, 42, 44, 59, 76, 143).[18] Defendants do not challenge that the Complaint adequately pleads that the federal securities laws and SEC rules and regulations promulgated thereunder required Defendants to file the Offering Documents with the SEC and governed their content. (Cmplt. ¶¶ 45, 96). Defendants acknowledge that the SEC has in fact brought an enforcement action against Defendants based upon the exact same Offering Documents identified in the Complaint. (Motion at 14.) Yet Defendants mistakenly assert that the Complaint must be dismissed because

---

[18] *See also* Cmplt. ¶¶ 6, 7, 8, 9, 11, 51, 56, 69, 71, 73, 85, 91, 94, 96, 97, 98, 102, 106, 125, 126.

14

it does not set forth detailed allegations about "SEC procedures or actions" concerning the SEC's review of securities filings. (Motion at 13).

Again, the Second Circuit's opinions in *United States v. Bilzerian* are instructive. 926 F.2d 1285 (1991) ("*Bilzerian I*") and 127 F.3d 237 (1997) ("*Bilzerian II*"). Like Defendants, Bilzerian argued that § 1001 did not apply to the false statements and omissions he made in filings with the SEC because the SEC "did not act upon" the filings but rather served as merely a repository of the documents for investors. *Bilzerian I* at 1300. In *Bilzerian I*, the Second Circuit rejected the argument that the filings were not "a matter within the jurisdiction" of the United States for purposes of § 1001. *Id.* (citing *Bryson v. United States,* 396 U.S. 64, 71 (1969) ("A statutory basis for an agency's request for information provides jurisdiction enough to punish fraudulent statements under § 1001.")). The Court explained:

> "Although the SEC may not act on every [filing], the filing of a false statement may interfere with its investigatory and enforcement function, including its determination whether or not to investigate a transaction. The securities laws are designed to make accurate information available to the investing public; the SEC's authority to regulate disclosure required under those laws brings the securities filings within its jurisdiction for purposes of § 1001."

*Bilzerian*, 926 F.2d at 1301.

On remand, Bilzerian recouched his argument as one of materiality, but again the Second Circuit affirmed his § 1001 conviction. *Bilzerian II*, 127 F.3d at 242. The Court held that as a matter of law, Bilzerian's false statements and omissions in SEC filings were material. *Id.*; *accord United States v. Fields*, 592 F.2d 638, 649-50 (2d. Cir. 1978) (reversing district court's finding that false statements in prospectus were not material to § 1001 charge). These Second Circuit opinions are not outliers. For instance, in *United States v. Turner*, the Sixth Circuit affirmed the § 1001 conviction of a defendant who did not even file the false forms directly with

15

the SEC, but rather to an entity that the SEC regulated. 22 Fed. Appx. 404, 409-10 (6th Cir. 2001) ("It is not necessary to show that the statement actually influenced an agency, but only that it had the capacity to do so."); *see also United States v. Berger*, 473 F.3d 1080, 1099 (9th Cir. 2007) ("Here, the government could have charged Berger with making false statements that related to the SEC's regulatory decisionmaking under § 1001 in addition to charging him with filing false statements that were material to investors under Section 32(a)" of Securities Exchange Act). Similarly, in *Lang*, 766 F. Supp. at 393, the court affirmed a § 1001 conviction for making false statements contained in Form 10-Q's filed with the SEC.

Defendants represent that it is "black-letter law" that filing documents containing false statements and omitting to state other material information with the SEC is "insufficient to plead a Section 1001 violation." (Motion at 13). But the "black-letter law" Defendants cite has nothing to do with SEC filings or civil pleading standards. *See United States v. Kwiat*, 817 F.2d 440 (7th Cir. 1987). Moreover, a fair reading of the *Kwiat*, decision actually supports the sufficiency of the Complaint's allegations. In *Kwiat*, the Seventh Circuit reversed a § 1001 conviction because the evidence was insufficient to show that the false statements on HUD-1 forms (forms created by the Department of Housing and Urban Development) could potentially affect the Federal Deposit Insurance Corporation – a completely separate agency. *Id.* at 445.[19] In other words, Defendants' "black-letter law" amounts to the unremarkable holding that in order to be convicted at a criminal trial of violating § 1001, the prosecution must introduce evidence

---

[19] Notably, the Court did not hold that it would have been impossible to make such a showing and, indeed, it posited evidence that could have been sufficient if introduced. *Id.* Moreover, the Court distinguished the facts before it from one of its previous cases, *United States v. Bailey*, 734 F.2d 296, 305 (1984), where it upheld a conviction for making false statements on a closing form. 817 F.2d at 446.

beyond a reasonable doubt showing that false statements made on one agency's form could possibly influence the actions of completely different government agency.[20]

Defendants also mistakenly assert that the Fourth Circuit's decision in *United States v. Littleton*, 76 F.3d 614 (4th Cir. 1996), "makes clear that the alleged filing of false statements with the SEC" cannot form the basis of a § 1001 violation. (Motion at 14). However, *Littleton* did not involve a § 1001 violation, a SEC filing, or a view on the sufficiency of a civil Complaint's allegations. In *Littleton*, the Fourth Circuit reversed § 1503 and § 1623 convictions based on false testimony the defendant gave at a suppression hearing concerning her son's confession. 76 F.3d at 618-19. The Court reasoned that since the testimony was irrelevant to the suppression hearing (since it did not bear upon her son's claim that he requested counsel prior to confessing), it was not capable of influencing the court's ruling on the suppression motion. *Id.*

Unlike the facts of *Kwiat, Ismail, and Littleton*, here Defendants made false statements and omitted to disclose other material information in Offering Documents required by law to be filed with the SEC. There can be no dispute that these documents are within the jurisdiction of the SEC and that it can (and has in fact) brought enforcement proceedings based upon Defendants' false statements and omissions contained therein. The SEC's public website makes clear that the selective review of filings is one of its primary tools to carry out its mission of protecting investors:

---

[20] Defendants also cite without explanation to *United States v. Ismail*, 97 F.3d 50, 61 (4th Cir. 1996). The facts of that case are even less applicable here than *Kwiat*. In that case, a conviction for making false statements on a bank signature card was overturned on appeal because the prosecution "presented *no* evidence of the materiality of these statements to a matter within the jurisdiction of the FDIC." *Id.* at 60. Although the Court found a lack of evidence at trial, it noted that the attenuated connection the prosecution attempted to make may have sufficed if the prosecution had introduced *any* evidence connecting the signature card to the jurisdiction of the FDIC. *Id.*

"[W]e selectively review filings made under the [securities laws] both to monitor and to enhance compliance with disclosure and accounting requirements … concentrat[ing our] review resources on disclosures that appear to be inconsistent with Commission rules or applicable accounting standards, or that appear to be materially deficient in their rationale or in clarity.…"[21]

This further distinguishes the facts here from those of *Kwiat, Ismail*, and *Littleton* where the "agency" with jurisdiction over collecting the information did not bring enforcement actions concerning the statements.[22]  Defendants' hyperbolic suggestion that this case opens the door to § 1001 prosecutions for statements exchanged solely between private parties is a classic red herring and should be rejected.  The Complaint alleges violations of § 1001 based upon the false statements Defendants made directly to the SEC – a government agency – in filings required by federal statute.  Nothing about this conduct implicates concerns over false statements made between private parties.

## 2.  Defendants' Misstatements to FHLB-San Francisco Violate § 1001.

Defendants made false statements to FHLB-San Francisco, a government-sponsored enterprise, by directly providing it with the Offering Documents and Preliminary Marketing Materials.  (Cmplt. ¶¶ 25, 52, 127, 143).  The Federal Housing Finance Board – an independent federal agency – directly oversaw all of FHLB-San Francisco's business operations when it purchased the Certificates.  (Cmplt. ¶ 25).  Nevertheless, Defendants assert that because FHLB-San Francisco itself is not a federal agency their false statements to it are outside the reach of § 1001.  Defendants' unsupported assertion is contrary to the law and must be rejected.

---

[21] *Available at* www.sec.gov/divisions/corpfin/cfabout.shtml

[22] In *Kwiat* HUD was not alleged to have received the HUD-1forms containing the false statements, and in *Ismail* the FDIC was not alleged to have received the signature cards containing the false statements. Similarly, in *Littleton*, the Court did not institute any contempt proceedings.

The plain text of § 1001 prohibits the making of a false statement "in any matter within the jurisdiction of any department or agency of the United States." 18 U.S.C. § 1001. The Supreme Court has "stressed that the term 'jurisdiction' should not be given a narrow or technical meaning for purposes of § 1001." *United States v. Rodgers*, 466 U.S. at 480 (internal quotations omitted). Thus, the Fourth Circuit has made clear that "within the jurisdiction of any department or agency of the United States" does not mean the false statement has to be made directly to a federal agency. *See United States v. Jackson*, 608 F.3d 193, 194 (4th Cir. 2010) (affirming § 1001 conviction for false time sheets submitted by subcontractor to prime contractor that had contracted with NSA).[23]

The Complaint alleges that FHLB-San Francisco was subject to the oversight of an "agency of the United States," specifically the Federal Housing Finance Board. (Cmplt. ¶ 25). The Federal Housing Finance Board was actually established by FIRREA in 1989 "to supervise the Federal Home Loan Banks" and "to ensure the Federal Home Loan Banks operate in a safe and sound manner." FIRREA § 702 (1989) amending 12 U.S.C. 1421 *et seq.* Among other things, the Board had responsibility "[t]o ensure that the Banks operate[d] in a safe and sound manner [and] to supervise *all business operations* of the Banks." 12 C.F.R. § 905.4 (2008) (emphasis added). There can be no serious doubt that FHLB-San Francisco's purchase of over $600 million in securities constituted "business operations" that were within the jurisdiction of the Federal Housing Finance Board. (Cmplt. ¶ 48) Thus, the Complaint sufficiently pleads that

---

[23] *Accord United States v. King*, 660 F.3d 1071, 1081 (9th Cir. 2010) (false statement to state agricultural inspector); *United States v. Taylor*, 582 F.3d 558, 564 (5th Cir. 2009) (false statements to state agency that received grant from HUD); *Turner*, 22 Fed. Appx. at 409-410 (false statements to entity overseen by SEC); *United States v. Davis*, 8 F.3d 923, 929 (2d Cir. 1993) (false statements to state agency that federal agency oversaw); *United States v. Herring*, 916 F.2d 1543 (11th Cir. 1990) (false statements made to state agency that received funds from DOL).

19

Defendants' false statements to FHLB-San Francisco regarding its purchase of those securities violated § 1001.

### 3. Defendants' Material Omissions are Actionable Under § 1001.

Defendants mistakenly claim that their material omissions to the SEC and FHLB-San Francisco are not actionable under § 1001 because the Complaint supposedly fails to allege that Defendants concealed information through a "trick, scheme or device." Defendants' assertion ignores the fact that their filing of Offering Documents that omitted required information was a "trick, scheme, or device." Thus, it should be rejected.

Courts routinely affirm § 1001 convictions of defendants who omitted information they were required to disclose on a form or filing because such omissions are "an affirmative act of concealment," i.e. a trick or a deceptive device. *United States v. Mubayyid*, 658 F.3d 35, 70-71 (1st Cir. 2011); *see also United States v. Moore*, 446 F.3d 671, 679 (7th Cir. 2006) (defendant had duty to disclose conflicts of interest on HUD form); *United States v. Dale*, 991 F.2d 819, 829 (D.C. Cir. 1993) (omission of foreign contacts on DOD form). In *Mubayyid*, the First Circuit expressly rejected the same argument made by Defendants here that simply filing a form omitting certain information does not constitute a scheme, trick or device under § 1001. *Id.* at 70; *see also United States v. Calhoon*, 97 F.3d 518, 527 (11th Cir. 1996) ("falsity through concealment exists where disclosure of the concealed information is required by a statute, government regulation, or form.) Like *Mubayyid*, Defendants fail to appreciate the distinction between simply saying nothing and affirmatively filing a document that omits required information. The former is not a violation of § 1001, the latter is.

20

Defendants' purported reliance on *United States v. London*, 550 F.2d 206, 213 (5th Cir. 1977) is misplaced.[24] In *London*, the Fifth Circuit reversed the dismissal of an indictment and held that the bare bones allegations tracking the statute were sufficient because they "adequately apprised [defendants] of the charges so that they might prepare a defense." *Id*. at 208. As explained by the Court, all that is required to prove a § 1001 violation based on an omission is a showing of "an affirmative act." *Id.* at 213; *see also United States v. Swaim*, 757 F.2d 1530, 1533-34 (5th Cir. 1985) (failure to disclose true recipient of mortgage proceeds on closing form).

Here, Defendants knowingly failed to disclose numerous items that the federal securities laws required to be contained in the Offering Documents. (Cmplt. ¶¶ 45, 51, 69, 85, 91, 96, 102, 106, 125, 145). Defendants filed those Offering Documents with the SEC and provided them directly to FHLB-San Francisco. (Cmplt. ¶¶ 2, 5, 15, 38, 39, 42, 44, 52, 59, 76, 127, 143). This conduct constituted "an affirmative act of concealment" that violated § 1001.

## II. DEFENDANTS ACTED KNOWINGLY AND WILLFULLY

The Complaint contains detailed allegations evidencing that each of the Defendants acted knowingly and willfully in defrauding the purchasers of BOAMs 2008-A Certificates. Defendants largely ignore these allegations and direct the Court to an inapposite Fourth Circuit ruling applying the heightened pleading standards of the Private Securities Litigation Reform Act of 1995 ("PSLRA") (which does not apply here) in arguing that the Complaint is deficient for supposedly failing to identify a particular agent of each Defendant who held the requisite scienter. (Motion at 9 (citing *Matrix Capital Mgmt. Fund, L.P. v. BearingPoint, Inc.*, 576 F.3d

---

[24] Defendants' citation to *London* is also curious given that the Court expressly found that the question of whether the "the government can succeed in proving the 'trick, scheme, or device' element,'" is "a question better left for the jury" not the court ruling on a motion to dismiss. 550 F.2d at 208.

172, 181 (4th Cir. 2009) ("The PSLRA requires a plaintiff to 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'") (quoting PSLRA)).  Moreover, the *Matrix* Court held that even under the PSRLA, a Complaint suffices if it "alleges facts giving rise to a strong inference that at least one corporate agent acted with the required state of mind …*even if the Complaint does not name the corporate agent as an individual defendant or otherwise identify the agent.*"  576 F.3d at 189 (emphasis added); *see also Makor Issues & Rights, Ltd. v. Tellabs Inc.,* 513 F.3d 702, 710 (7th Cir. 2008) ("it is possible to draw a strong inference of corporate scienter without being able to name the individuals who concocted and disseminated the fraud.").

The Complaint is governed by Fed. R. Civ. P. 9(b) (not the PSLRA), which only requires that a defendant's state of mind be alleged generally.  *See Wells Fargo*, WL5312564, *15 (refusing to dismiss FIRREA complaint based on false statements to FHA).  In other words, "Rule 9(b) allows conclusory allegations of defendant's knowledge as to the true facts." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (rejecting defendant's "single actor" theory of corporate scienter); *see also Bertelli v. Wells Fargo Bank, N.A.*, No. 11-cv-179, 2013 WL5460179, *9 (W.D.N.C. 2013) (Sept. 30, 2013) (Reidinger, J.) ("malice, intent, and knowledge – may be plead generally").

Recently, in two FIRREA cases brought by the Government against Defendants' counterparts, the Southern District of New York has rejected identical arguments.  In *Wells Fargo,* 2013 WL5312564, *19 & n.18, the Court held that, "Because the Government alleges that Wells Fargo has committed fraudulent acts, it is the Bank's intent, not that of the Bank's employees, that must be pleaded with sufficient particularity to satisfy Rule 9(b)." (citations

22

omitted).  Similarly, in *Bank of N.Y. Mellon*, 941 F. Supp. 2d at 470, the Court held that "the allegations set forth above hardly involve piecing together scraps of innocent knowledge held by various corporate officials in the way that has given courts pause about theories of collective knowledge to allege corporate *scienter*.   Rather, the SAC alleges a pattern of misrepresentations by Bank employees who, the SAC plausibly alleges, knew that their representations were false. These give rise to a strong inference that these Bank employees intended to deceive customers …." (quotations omitted).  Though these two cases are the most analogous comparisons to the facts here, Defendants do not even cite them.

The Complaint's allegations regarding each of the Defendants' scienter exceed those required by Rule 9(b).[25]  Although not required, the Complaint ascribes relevant knowledge of the false statements and omissions to the BOA-Securities Managing Director (an officer of BOA-Bank, BOA-Securities, and BOA-Mortgage) (Cmplt. ¶¶ 23, 44, 61, 117, 119, 121), the BOA-Bank Senior VP (an officer of BOA-Bank and BOA-Mortgage) (Cmplt. ¶¶ 24, 61, 103, 119), and other officers and employees of BOA-Bank, BOA-Corp., BOA-Securities, and BOA-Mortgage (Cmplt. ¶¶ 42, 44, 61, 86, 87, 88, 89, 91, 94, 121, 122, 123, 130, 131, 133, 134, 136).

For example, the BOA-Securities Managing Director and the BOA-Bank Senior VP, who both had responsibility for reviewing the Offering Documents, knew that BOA-Bank's QA Reports were showing a marked increase in the number of mortgages that had "serious or critical

---

[25] When judging the sufficiency of a complaint's allegations of scienter, the court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss . . . . The inquiry . . . is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd*, 551 U.S. 308, 322-324 (2007); *Duke Energy*, 2013 WL4004274, *25-26.

exceptions" to BOA-Bank's underwriting standards and thus knew that there was no basis for the statements in the Offering Documents concerning the mortgages' compliance with those standards. (Cmplt. ¶¶ 59-69). Moreover, both of these employees knew (prior to approving the Offering Documents) that the performance of mortgages originated through BOA-Bank's Wholesale Channel had been deteriorating sharply in the months prior to the closing of BOAMS 2008-A. (Cmplt. ¶¶ 76-84). They also both knew that mortgages originated through the Wholesale Channel caused more losses to investors in BOA-Bank sponsored RMBS in 2007 than mortgages originated through other channels. (Cmplt. ¶¶ 86-91). Further, the Complaint alleges that it was well known within BOA-Bank, BOA-Securities, and BOA-Corp. (and thus necessarily BOA-Mortgage), including by the BOA-Securities Managing Director and the BOA-Bank Senior VP, that the Wholesale Channel had significant problems, and that these problems led to the decision to close it. (Cmplt. ¶¶ 91, 94). The Complaint also alleges that the BOA-Bank Senior VP must have known about BOA-Bank's failure to obtain and use the IRS 4506-T forms in connection with the origination of the PaperSaver mortgages contrary to the representations in the Offering Documents. (Cmplt. ¶¶ 100-103).[26] Finally, the Complaint contains several facts showing that each Defendant (as well as the BOA-Bank Senior VP and the

---

[26] It is well settled that all reasonable inferences are to be construed in the Government's favor and that the law gives equal weight to direct and circumstantial evidence. Yet Defendants object to allegations of "constructive knowledge" and wrongly assert that the Complaint must "plead actual knowledge of a single authorized agent of a Defendant." Defendants cite *United States v. West*, 666 F.2d 16, 19 (2d Cir. 1981); *United States v. Greenberg*, 1988 WL21229, *3 (4th Cir. 1988) (unpublished); and *United States v. Hester*, 880 F.2d 799, 802 (4th Cir. 1989), for this supposed rule of pleading. But *West, Greenberg,* and *Hester* are all criminal cases reviewing defendants' convictions that have nothing to do with constructive knowledge or pleading standards. These cases actually support a finding that Defendants acted with scienter because they acknowledge the validity of a "willful blindness" or "conscious disregard" theory of scienter.

BOA-Securities Managing Director) had a motive and opportunity to defraud the BOAMs 2008-A investors.[27]  (Cmplt. ¶¶ 23, 24, 124, 133, 134, 136).

Defendants largely ignore these allegations and the reasonable inferences drawn therefrom.  To the extent they address any of them, Defendants concede that the Complaint alleges scienter concerning their failure to disclose the lack of due diligence and the worsening trends in mortgages (Cmplt. ¶¶ 145(j), (p)), yet claim that they disclosed to investors "that the Bank **only** conducted a third party review of loans originated by other institutions."  (Motion at 11 n.9 (emphasis added)).  As Defendants know, the limiting word "only" was never included in the disclosures.  Defendants also claim that they disclosed to investors the dramatic decline in the performance of BOA-Bank originated mortgages.  *Id.*  The "evidence" cited for that claim is a boilerplate disclosure about "mortgage loans generally" not mortgages originated by BOA-Bank.  Moreover, even if the reference had been specifically about BOA-Bank originated mortgages, such boilerplate disclosures cannot cure Defendants' specific false statements and misleading omissions.  *See, e.g., In re MF Global Holdings Secs. Litig.*, 2013 WL5996426, *28 (S.D.N.Y. Nov. 12, 2013) (boilerplate disclosures pointing "generally to potential unexpected events or contingencies" cannot make up for misstatements or omissions of specific information); *UBS Americas*, 858 F. Supp. 2d at 332 (boilerplate disclosures about general compliance with underwriting standards cannot render specific false statements unactionable).

In short, the Complaint adequately pleads that each of the Defendants acted knowingly and willfully with respect to each of the material misstatements and omissions identified in the Complaint and thus Defendants' Motion should be denied.

---

[27] *See Tellabs*, 551 U.S. at 325 ("motive can be a relevant consideration" and "personal financial gain may weigh heavily in favor of a scienter inference").

Dated:  December 23, 2013.

Respectfully submitted,

ANNE M. TOMPKINS
UNITED STATES ATTORNEY

**s/ Daniel S. Ryan**
DANIEL S. RYAN
MARK T. ODULIO
Assistant United States Attorneys
227 West Trade Street, Suite 1650
Charlotte, NC  28202
Tel. 704.344.6222
Fax 704.344.6629
email:  daniel.ryan@usdoj.gov
           mark.odulio@usdoj.gov

26

**CERTIFICATE OF SERVICE**

I hereby certify that on December 23, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

MCGUIRE WOODS LLP
Kenneth D. Bell
201 North Tryon Street, Suite 3900
Charlotte, North Carolina 28202
(704) 373-8999 (tel)
kbell@mcguirewoods.com

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
John K. Carroll
Boris Bershteyn
Four Times Square
New York, New York 10036-1811
(212) 735-3000 (tel)
john.carroll@skadden.com
boris.bershteyn@skadden.com

Charles F. Smith
Amy L. Van Gelder
155 North Wacker Drive, Suite 2700
Chicago, Illinois 60606
(312) 407-0700 (tel)
charles.smith@skadden.com
amy.vangelder@skadden.com

**s/ Daniel S. Ryan**
DANIEL S. RYAN

27