# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:13-cv-446-MOC-DSC

| | |
|---|---|
| UNITED STATES OF AMERICA, | )<br>)<br>) |
| Plaintiff, | )    **MEMORANDUM AND RECOMMENDATION**<br>)<br>) |
| v. | )<br>) |
| BANK OF AMERICA<br>CORPORATION, et. al., | )<br>)<br>) |
| Defendants. | )<br>)<br>) |

**THIS MATTER** is before the Court on Defendants' "Motion to Dismiss Plaintiff's Complaint" (document #19), as well as the parties' briefs and exhibits. See documents ##19, 29 and 30.

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and this Motion is now ripe for the Court's consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that the Motion to Dismiss be granted, as discussed below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This is an action seeking civil penalties and other relief for violations of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1833a. Accepting the factual allegations of the Complaint as true, investors in residential mortgage backed securities ("RMBS") received certificates giving them the rights to payments from a pool

of residential mortgages that had been offered and underwritten by Defendants in a transaction identified as BOAMS 2008-A. The gravamen of the Complaint is that Defendants committed two predicate criminal offenses under FIRREA when they failed to adequately disclose to potential investors that seventy percent of those mortgages originated in the "wholesale channel," that is, through third party mortgage brokers.

The final loan pool included 1,191 "jumbo" adjustable rate mortgages originated between July and November 2007.[1] The borrowers had a weighted average credit score of 750. Most had more than twenty percent equity in their property. A majority of the loans were secured by the borrower's primary residence. The mortgages in the loan pool represented approximately $855 million in principal.

On January 29, 2008, Defendant Banc of America Mortgage Securities, Inc. ("BOAMS") filed a Prospectus and Prospectus Supplement. They described the characteristics of the mortgages and disclosed that some had originated in the wholesale channel. They also stated that the loans were underwritten "materially in accordance" with the Bank's general underwriting standards, which allowed loan underwriters to utilize "compensating factors to offset one or more features of the loan transaction that may not specifically comply with the [underwriting] guidelines." The Prospectus Supplement also disclosed various risks, including the deteriorating market for mortgage backed securities, increased likelihood of prepayment, geographic concentration of the loans, and the effects of mortgage defaults or delinquencies on returns.

BOAMS sold the certificates to investors in early 2008. Wachovia and the Federal Home Loan Bank of San Francisco ("FHLB-SF") bought approximately ninety-eight percent of the

---

[1] At the time of the transaction, a "jumbo" mortgage generally had principal of more than $417,000.

securities offered.[2]

In 2008 and 2009, the residential real estate market experienced a downturn throughout the United States, and many RMBS suffered significant losses, including BOAMS 2008-A.

In 2010, the Securities and Exchange Commission ("SEC"), and later the United States Department of Justice ("DOJ" or "the Government"), initiated investigations of Defendants' RMBS business.

On August 6, 2013, the SEC filed a Complaint alleging a non-fraud violation of Section 5 as well as negligence-based violations of Section 17 of the Securities Act of 1933. See SEC v. Bank of America, N.A., No. 13-cv-447-MOC-DSC (W.D.N.C.)

That same day, the Government filed its Complaint alleging that the offering documents accompanying the sale of the certificates contained seven false statements, omitted seventeen material facts, and contained false and misleading statistics concerning the loan pool.

The Government seeks civil penalties under FIRREA based upon predicate criminal offenses under 18 U.S.C. § 1001 (false statements) and 18 U.S.C. § 1014 (fraud in "[l]oan and credit applications").

On November 8, 2013, Defendants filed their Motion to Dismiss, contending among other things that Complaint fails to adequately plead the predicate offenses.

Defendants' Motion has been fully briefed and is ripe for determination.

---

2 Although not material to the resolution of this Motion, Defendants contend that Defendant Merrill Lynch, Pierce, Fenner & Smith, Inc. f/k/a/ Banc of America Securities LLC ("BAS") provided preliminary information about the loan pool to Wachovia and FHLB-SF in December 2007. This information included the fact that approximately seventy percent of the loan pool originated from third party mortgage brokers.

## II. DISCUSSION

### A. Standard of Review

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555) (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff

armed with nothing more than conclusions." Id. at 678-79.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 679. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)). In other words, if after taking the complaint's well-pleaded factual allegations as true, a lawful alternative explanation appears a "more likely" cause of the complained of behavior, the claim for relief is not plausible. Id.

### B. Predicate Offense Under Section 18 U.S.C. § 1001

The Government must allege that Defendants (1) made false statements to, or concealed facts from, a governmental agency; (2) did so knowingly or willfully; and that (3) "the false statement or concealed fact was material to a matter within the jurisdiction of the agency." United States v. Ismail, 97 F.3d 50, 60 (4th Cir. 1996) (internal quotation omitted) (reversing conviction for violating Section 1001 because effect on agency action was not established); Fed. R. Civ. Pro. 9(b). The Government must show that the alleged false statement had "a natural tendency to influence agency action or is capable of influencing agency action." Id. See also United States v. Littleton, 76 F.3d 614, 618 (4th Cir. 1996) (reversing conviction because defendant testified to "nothing at the suppression hearing that could have conceivably influenced the district court to suppress her son's confession" despite her false statement); United States v.

Kwiat, 817 F.2d 440, 445 (7th Cir. 1987) ("[A] false statement is not a crime unless the statement is material to the work of the agency . . . . Deliberately using the wrong middle initial for the seller is not a felony—not unless the right middle initial could be important.").

In its brief, the Government suggests two alternative theories: that the Defendants' alleged false statements were material because (1) they were made on forms filed with the SEC which has now brought an enforcement action; or (2) they were made to FHLB-SF, an entity "regulated" by a federal agency -- the Federal Housing Finance Board ("FHFB").

The Fourth Circuit Court of Appeals has made clear that a false statement, even if made within the jurisdiction of an agency of the United States, does not violate Section 1001 unless it has a tendency to cause the agency to act other than by bringing an action based upon the false statement. Ismail, 97 F.3d at 60 (action brought based upon false statement insufficient to establish materiality); Littleton, 76 F.3d at 618 (initiating prosecution for perjury was insufficient to establish materiality). The Court examined the false statements and determined that the government agency would not have had a tendency to act apart from the subsequent enforcement action. See also Kwiat, 817 F.2d at 445 (no materiality despite government decision to bring criminal charges).

If the materiality requirement of Section 1001 could be met by initiation of an enforcement action, that requirement could in effect be abrogated by exercise of the Government's discretion. Materiality under Section 1001 requires more. See, e.g., United States v. Hamilton, 699 F.3d 356, 362-63 (4th Cir. 2012) (finding materiality where false statements were designed to cause a federal agency to make payment to defendant).

The Defendants' alleged false statements to FHLB-SF also fail to satisfy the materiality

6

requirement. The Government asserts that statements made to FHLB-SF violate Section 1001 because they are "within the jurisdiction of" another government agency—the FHFB. A false statement under Section 1001 must occur "within the jurisdiction" of the federal government and be material to the decisions of a federal agency. Ismail, 97 F.3d at 60. The Complaint contains no factual allegations that the Defendants' statements occurred within the jurisdiction of FHFB or affected its decisions. Materiality cannot be inferred from the allegation that a government agency (FHFB) oversaw the recipient of the alleged misstatements (FHLB-SF). The Government's argument here is even less compelling. There is no indication that FHFB or FHLB-SF ever brought any action or claims against Defendants arising from BOAMS-2008-A.

For these reasons, the undersigned respectfully recommends that Defendants' Motion to Dismiss be granted as to the Government's FIRREA claim predicated on Section 1001.

### C. Predicate Offense Under 18 U.S.C. § 1014

To plead a Section 1014 claim, the Government must allege with particularity that the Defendants (1) "knowingly ma[de] any false statement or report or willfully overvalue[d] any land, property or security;" (2) "for the purpose of influencing in any way the action of" a covered lending and insurance institution; (3) "upon any application, advance, discount, purchase, purchase agreement, repurchase agreement, loan, or insurance agreement or application for insurance or a guarantee, or any change or extension of any of the same, by renewal, deferment of action or otherwise, or the acceptance, release, or substitution of security therefor." 18 U.S.C. § 1014; Fed. R. Civ. P. 9(b).

The Complaint alleges the violation of Section 1014 because two covered institutions (Wachovia and FHLB-SF) "purchased" the certificates. The Supreme Court has held that this

provision applies only to "representations made in connection with conventional loan or related transactions." Williams v. United States, 458 U.S. 279, 288-89 (1982); see also United States v. Devoll, 39 F.3d 575, 578-79 (5th Cir. 1994) ("We hold today that section 1014 relates only to lending activities by financial institutions."); Reass v. United States, 99 F.2d 752, 755 (4th Cir. 1938) (explaining that predecessor statute "was passed to protect the Federal Home Loan Banks from fraudulent attempts to secure favorable action on applications for loans and like matters").[3] The statute has been applied consistently in the context of traditional customer related bank activities such as loans, and not to the purchase of securities.

For these reasons, the undersigned respectfully recommends that Defendants' Motion to Dismiss be granted as to the Government's FIRREA claim predicated on Section 1014.

### III. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Defendants' "Motion to Dismiss Plaintiff's Complaint" (document #19) be **GRANTED** and the Complaint be **DISMISSED WITH PREJUDICE**.

### IV. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same.

---

[3] Congressional deliberations consistently described Section 2014 as a prohibition on false statements in loan applications and similar documents—not as a new safeguard against securities fraud. See, e.g., H.R. Rep. No. 91–1457, at 21 (1970) (Section 1014 relates "to false statements in loan and credit applications"); S. Rep. No. 1078, 88th Cong., 2d Sess., at 5 (1964) (Section 1014 bars "false statements or willful overvaluations in connection with applications, loans, and the like"); id. at 4 ("Section 1014 is designed primarily to apply to borrowers from Federal agencies or federally chartered organizations.")

Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge.  Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005);  Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989).   Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal.  Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Max O. Cogburn, Jr.

**SO RECOMMENDED AND ORDERED.**

Signed: March 27, 2014

David S. Cayer
United States Magistrate Judge