UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:13-cv-00446-MOC-DSC

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| Vs. ) | ORDER |
| ) | |
| **BANK OF AMERICA CORPORATION** ) | |
| **BANC OF AMERICA MORTGAGE** ) | |
| **SECURITIES, INC.** ) | |
| **BANK OF AMERICA, NATIONAL** ) | |
| **ASSOCIATION** ) | |
| **MERRILL LYNCH, PIERCE, FENNER &** ) | |
| **SMITH, INC.,** ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** is before the court on review of a Memorandum and Recommendation issued in this matter. In the Memorandum and Recommendation, the magistrate judge recommended dismissal of this action under Rule 12(b)(6), Federal Rules of Civil Procedure, and advised the parties of the right to file objections within 14 days, all in accordance with 28, United States Code, Section 636(b)(1)(c). Objections have been filed within the time allowed, oral arguments have been heard on those objections, and the court has considered the underlying Motion to Dismiss *de novo*.

### FINDINGS and CONCLUSIONS

I.   **Applicable Standard**

The *Federal Magistrates Act of 1979*, as amended, provides that "a district court shall make a *de novo* determination of those portions of the report or specific proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); Camby v. Davis, 718 F.2d

1

198, 200 (4th Cir.1983). However, "when objections to strictly legal issues are raised and no factual issues are challenged, *de novo* review of the record may be dispensed with." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir.1982). Similarly, *de novo* review is not required by the statute "when a party makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations." Id. Moreover, the statute does not on its face require any review at all of issues that are not the subject of an objection. Thomas v. Arn, 474 U.S. 140, 149 (1985); Camby v. Davis, 718 F.2d at 200. Nonetheless, a district judge is responsible for the final determination and outcome of the case, and accordingly the court has conducted a careful review of the magistrate judge's recommendation.

**II.    Factual Setting**

For the limited purpose of considering the Motion to Dismiss, the court has considered as true the well-pled facts contained in the Complaint. Fed.R.Civ.P. 12(b)(6). According to the Complaint, defendants originated, securitized, and sold billions of dollars in home loans by late 2007. By that same date, however, senior employees and management of the defendants knew that despite such uptick in its mortgage loan origination business, a significant percentage of the mortgages originated by the bank failed to materially comply with the bank's underwriting standards. Not only did they know that there were problems in loan origination, there were problems in servicing those loans as a significant percentage of those loans were performing poorly.

According to the government, the problem with the loans was one created by the bank: rather than reward its employees for originating quality loans (to wit, loans that were taken out by qualified borrowers who brought equity and collateral to the table), the bank was rewarding

2

quantity by giving bonuses to employees who surpassed mortgage production targets. Apparently, these employees were able to surpass goals by bringing in unqualified borrowers who took out loans they either could not pay back because they lacked sufficient income or had no incentive to pay back because they had no skin in the game, or both. Thus, by the end of 2007, the bank knew the loans it was repackaging for sale to others in the form of "Residential Mortgage Backed Securities" ("RMBS") were not the investment grade products investors were looking to add to their portfolios. The government contends that the bank's pre-2008 zealousness in originating loans and earning fees was so fervent that it resulted in the bank directing its employees that it was not their job to look for fraud when originating home mortgage loans.

The government contends that not only were underwriting practices critical in originating loans, those practices were a critical factor for investors tasked with deciding whether to purchase RMBS. As securities, representations and disclosures made to prospective buyers of RMBS are regulated by the United States Securities and Exchange Commission ("SEC"). While an oversimplification, the SEC requires that those who undertake to sell securities to the public provide potential investors with truthful financial statements and other significant information. More specifically, the Securities Act of 1933 prohibits deceit, misrepresentations, and other fraud in the sale of securities and requires those offering securities to register the securities and provide offering information to the SEC .

With those obligations in mind, the government contends that senior bank employees knew that these poor quality loans were not performing well, but were being bundled into RMBS that they were representing to be high quality securities. It further contends that these same employees produced "Offering Documents and Preliminary Marketing Materials" for what

3

would become Defendants' last RMBS offering – the BOAMS 2008-A securitization. In those materials, the government contends that defendants made representations about the quality of the mortgages collateralizing the BOAMS 2008-A securitization, how the bank originated those mortgages, and the likelihood that the borrowers behind those mortgages would make their scheduled payments in a timely fashion. The government contends that all of these representations were knowingly false. Further, the government contends that these employees failed to undertake the required due diligence in researching the performance of the loans underlying the securities.

While the submission of fraudulent offering statements to the public could certainly form the basis of private claims against defendants by those who relied on those statements to their detriment (which is not at issue in this action), the Offering Documents were filed with the SEC and, the government contends, were relied on by two "covered institutions": the Federal Home Loan Bank of San Francisco ("FHLB-San Francisco"); and two entities affiliated with Wachovia Bank. The BOAMS 2008-A Certificates were backed by $855 million in home loans and the purchasers were lead to believe they were purchasing high quality, prime securities. In the end, BOAMS 2008-A suffered significant losses.

***

In bringing this action, the government contends that the offering documents accompanying the sale of the certificates contained seven false statements, omitted seventeen material facts, and contained false and misleading statistics concerning the loan pool. It seeks civil penalties under FIRREA based upon predicate criminal offenses under 18 U.S.C. § 1001 (false statements) and 18 U.S.C. § 1014 (fraud in "[l]oan and credit applications"). On November 8, 2013, defendants

4

filed their Motion to Dismiss, contending among other things that the Complaint fails to adequately plead the predicate offenses.

   **III.   Discussion**

   **A.  Rule 12(b)(6) Standard**

Until 2007, a complaint could not be dismissed under Rule 12(b)(6) unless it appeared certain that plaintiff could prove no set of facts which would support its claim and entitle it to relief. Neitzke v. Williams, 490 U.S. 319 (1989); Conley v. Gibson, 355 U.S. 41 (1957).  This "no set of facts" standard was specifically abrogated by the Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), where the Court held that the "no set of facts" standard first espoused in Conley, supra, only describes the "breadth of opportunity to prove what an adequate complaint claims, not the minimum adequate pleading to govern a complaint's survival."  Id., at 563.  The Court specifically rejected use of the "no set of facts" standard because such standard would improperly allow a "wholly conclusory statement of claim" to "survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." Id., at 561 (alteration in original).

 Post Twombly, to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts in his complaint that "raise a right to relief above the speculative level." Id., at 555.

> [A] plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . .

Id. (second alteration in original; citation omitted). Further, a complaint will not survive Rule 12(b)(6) review where it contains "naked assertion[s] devoid of further factual enhancement." Id., at 557. Instead, a plaintiff must now plead sufficient facts to state a claim for relief that is "*plausible* on its face." Id., at 570 (emphasis added).

While the Court was clear in Twombly that Conley was no longer controlling, it again visited the Rule 12(b)(6) pleading standard in Ashcroft v. Iqbal, 556 U.S. 662 (2009). In Iqbal, the Court determined that Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Id. at 678. The Court explained that, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" Id. (citing Twombly, supra; emphasis added). What is plausible is defined by the Court:

> [a] claim has facial plausibility when the plaintiff pleads sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Id.

This "plausibility standard" requires "more than a sheer possibility that a defendant has acted unlawfully." Id. Thus, a complaint falls short of the plausibility standard where a plaintiff pleads "facts that are 'merely consistent with' a defendant's liability . . . ." Id. While the court accepts plausible factual allegations made in a complaint as true and considers those facts in the light most favorable to plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt.'s Inc. v. J.D. Assoc.'s, LLP, 213 F. 3d 175, 180 (4th Cir. 2000).

In sum, when ruling on a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*) (citations omitted). A complaint "need only give the defendant fair notice of what the claim is and the grounds upon which it rests." Id. at 93 (alteration and internal quotation marks omitted). However, to survive a motion to dismiss, the complaint must "state[] a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based

6

upon "its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950. While a plaintiff is not required to plead facts that constitute a *prima facie* case in order to survive a motion to dismiss, see Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510-15 (2002), "[f]actual allegations must be enough to raise a right to relief above the speculative level," Bell Atlantic Corp. v. Twombly, 550 U.S. at 555.

### B.  Motion to Dismiss  FIRREA Section 1001 Claim

In order to state a claim for relief under FIRREA for a Section 1001 violation, the government must allege that defendants (1) made false statements to, or concealed facts from, a governmental agency; (2) did so knowingly or willfully; and that (3) the false statement or concealed fact was material to a matter within the jurisdiction of the agency. United States v. Ismail, 97 F.3d 50, 60 (4th Cir. 1996). Defendant contends that the government has failed to adequately plead materiality. The government contends that the Complaint satisfies the pleading requirement as to materiality because (1) the false statements were made on forms filed with the SEC, which has now brought an enforcement action; or (2) the false statements were made to FHLB-SF, an entity "regulated" by a federal agency, the Federal Housing Finance Board ("FHFB").

Prevailing case law in the Fourth Circuit provides that a false statement, even if made within the jurisdiction of an agency of the United States, does not violate Section 1001 unless it has a tendency to cause the agency to act other than by bringing an action based upon the false statement. Ismail, 97 F.3d at 60. The appellate court held in Ismail as follows:

> A fact about a matter within an agency's jurisdiction is material under § 1001 if it "has a natural tendency to influence agency action or is capable of influencing agency action." Id. (quoting United States v. Norris, 749 F.2d 1116, 1122 (4th Cir.1984), *cert. denied*, 471 U.S. 1065, 105 S.Ct. 2139, 85 L.Ed.2d 496 (1985)); see also United States v. Gaudin, 515U.S. 506, ----, 115 S.Ct. 2310, 2313, 132 L.Ed.2d 444 (1995). "[T]here is no requirement that the false statement

7

[actually] influence or effect the decision making process of a department of the United States government." Arch Trading, 987 F.2d at 1095 (quoting Norris, alterations in Arch Trading ).

Id.

First, the court fully concurs in Judge Cayer's conclusion that the government's alternative assertion that the false statements are "within the jurisdiction of" another government agency, the FHFB, is not enough, as the complaint contains no allegation of fact that the defendants' statements occurred within the jurisdiction of FHFB or affected its decisions. Second, and more at issue in the government's objections and oral argument, is Judge Cayer's conclusion that if materiality could be met by the government bringing an enforcement action (to wit, by bringing the companion action SEC v. Bank of America Corporation, 3:13cv447 (W.D.N.C.)), the materiality requirement could be abrogated by the exercise of government discretion. At the hearing, defendant argued that a number of the facts argued by the government in support of its objection are nowhere to be found in its Complaint, and it appears from the government's brief that, while it believes the instant Complaint is sufficient, amendment of the Complaint could alleviate any concerns the court may have under Rule 12(b)(6).[1] In turn, defendants argue that amendment would be futile as plaintiff's error was in bringing this claim in the first place.

This court is well aware of the preference expressed by the Fourth Circuit for allowing amendment to "elaborate on … allegations that were previously pled in a conclusory fashion." Scott v. Family Dollar Stores, Inc., 733 F.3d 105, 118 (4th Cir. 2013).

> Further, we have held that "the filing of a supplemental pleading is an appropriate mechanism for curing numerous possible defects in a complaint." *Franks v. Ross,* 313 F.3d 184, 198 (4th Cir.2002) (also noting that "[u]nder Rule

---

[1] "[T]he United States should be allowed to amend its Complaint to remedy any perceived errors." Objections (#33) at 2.

8

15(d), a party may supplement its complaint 'even though the original pleading is defective in its statement of a claim for relief or defense.'").

Id. Rather than dismiss this claim, the court will allow amendment. By allowing amendment, the Motion to Dismiss is moot as a matter of law. Young v. City of Mount Ranier, 238 F. 3d 567, 573 (4th Cir. 2001) ("[t]he general rule ...is that an amended pleading supersedes the original pleading, rendering the original pleading of no effect); Taylor v. Abate, 1995 WL 362488, *2 (E.D.N.Y.1995)[2] ("Defendants' motion to dismiss is addressed solely to the original complaint…. Consequently, upon the filing of the amended complaint, their motion is mooted and, therefore, denied."); In re Colonial Ltd. Partnership Litig., 854 F.Supp. 64, 80 (D.Conn.1994) (noting where "a plaintiff amends its complaint while a motion to dismiss is pending" the court may "deny[ ] the motion as moot"); Rathke v. HCA Management Co., Inc., 1989 WL 161431, at *1 n. 1 (D.Kan.1989) (holding that "motion to dismiss … became moot when plaintiff filed an amended complaint"); Gresham v. Waffle House, Inc., 586 F.Supp. 1442, 1444 n. 1 (N.D.Ga.1984) (same).

### C. Motion to Dismiss FIRREA Section 1014 Claim

To state a claim for relief under FIRREA for a Section 1014 violation, the government must allege *with particularity* (Fed.R.Civ.P. 9(b)) that the defendants (1) "knowingly ma[de] any false statement or report or willfully overvalue[d] any land, property or security;" (2) "for the purpose of influencing in any way the action of" a covered lending and insurance institution; (3) "upon any application, advance, discount, purchase, purchase agreement, repurchase agreement, loan, or insurance agreement or application for insurance or a guarantee, or any change or extension of any of the same, by renewal, deferment of action or otherwise, or the

---

[2] Due to the limits of ECF, copies of unpublished decisions cited in this Order are incorporated into the court record through reference to the Westlaw citation.

9

acceptance, release, or substitution of security therefor." 18 U.S.C. § 1014. The government contends that there was a Section 1014 violation because two "covered institutions" (Wachovia and FHLB-SF) bought BOA's mortgage-backed security certificates based on false statements made by defendants.

The Supreme Court has held that Section 1014 applies only to "representations made in connection with conventional loan or related transactions." Williams v. United States, 458 U.S. 279, 288-89 (1982); United States v. Devoll, 39 F.3d 575, 578-79 (5th Cir. 1994) ("We hold today that section 1014 relates only to lending activities by financial institutions."); Reass v. United States, 99 F.2d 752, 755 (4th Cir. 1938) (explaining that predecessor statute "was passed to protect the Federal Home Loan Banks from fraudulent attempts to secure favorable action on applications for loans and like matters"). The Court in Williams was, however, considering whether Section 1014 could reach a defendant who allegedly made a false statement to a bank by writing a check as to which he had insufficient funds, an activity which had traditionally been prosecuted by the states. In pertinent part, the Court determined that signing a check is not a "statement" under Section 1014.

A more recent decision of the Court of Appeals for the Fourth Circuit makes this court hesitant to read Williams as holding that Section 1014 applies, as defendants contend, only to representations made in connection with conventional loans and transactions related to conventional loans. See Williams, 458 U.S. at 288-89. In Elliot v. United States, 332 F.3d 753 (4th Cir. 2003), the appellate court held that defendant's argument that Section 1014 was limited to loans did not bar her conviction for depositing forged checks:

> Elliott's contention fails, however, because the advances that Southside provided Elliott are plainly within the scope of the "related transactions" contemplated by the Williams decision. Section 1014 criminalizes the making of a false statement "for the purpose of influencing in any way the action of [an FDIC-

10

Case 3:13-cv-00446-MOC-DSC   Document 41   Filed 06/19/14   Page 10 of 13

> insured financial institution] upon any application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, or loan."

Id. at 763 (emphasis and citation omitted). While receipt of an "advance" on deposits is arguably a loan, it is but one activity within "related transactions" as provided in Section 1014. The term "loan" is listed with in the "related transactions" in the disjunctive as Congress used "or." It follows in this case that fraud in securing a "purchase" from a bank is just as actionable as fraud in securing a "loan" as Congress specifically listed "purchase" as a related transaction. While not binding on this court, the Seventh Circuit has reached that same result:

> The text of the statute is straightforward and broad: it applies to "any" statement made for the purpose of influencing in "any" way the action of "any" of the covered institutions in "any" application. Krilich caused vendors to make false statements in applications presented to federally insured banks. To overcome § 1014's breadth Krilich relies on the title of the section, specifically the phrase "[l]oan and credit applications generally". The title, according to Krilich, informs the reader that the statute applies only to applications for loans or credit, and not to applications for funds held in trust. Yet if the title limits the statute's breadth, then Krilich might as well argue that because his statements were not made in connection with "crop insurance" the statute does not apply to them. Although a statute's title can inform the understanding of ambiguous text, it does not "limit the plain meaning of the text". This text is not ambiguous, and only last year the Supreme Court reminded us not to add elements to § 1014.
> 
> The drumbeat of "any" in § 1014 is not the only reason to conclude that it applies to transactions other than loans (and crop insurance). It deals with misstatements to "a Federal Reserve bank, … the Office of Thrift Supervision, ... the Federal Housing Finance Board, the Federal Deposit Insurance Corporation, the Resolution Trust Corporation, the Farm Credit System Insurance Corporation, [and] the National Credit Union Administration Board", among others. None of these institutions makes loans (or underwrites crop insurance); and although one could quibble with this assessment by saying that the discount activities of the Federal Reserve and some of the operations of the FDIC (or RTC) as receiver of failed financial institutions involve loans, the Office of Thrift Supervision and other listed bodies are just regulators. If their inclusion in the statute is to have meaning, then § 1014 must cover statements that are not designed to influence an extension of credit—indeed, must cover statements that have nothing to do with the payment of money. Krilich's statements, like those in Tucker, were designed to induce a financial institution to disburse money, so they are within the reach of § 1014. Tiebreakers and doubt resolvers such as the Rule of Lenity therefore do not help Krilich; his problem is not that the statute is ambiguous, but that it is comprehensive. Legislative history likewise is of no assistance, given the

11

> Supreme Court's view that legislative history may not be employed to limit the effect of a broadly worded statute.

United States v. Krilich, 159 F.3d 1020, 1028-1029 (7th Cir. 1998). As the Fourth Circuit found in Elliott and the Seventh Circuit found in Krilich, it would appear that Section 1014 does in fact reach the making of false statements to a federally insured banking institution for the purpose of influencing "*in any way*" action on "any … purchase," 18 U.S.C. § 1014, which would include fraud in inducing a bank to purchase of securities.

While Section 1014 is primarily a post-war synthesis of 13 federal laws criminalizing various false statements to an array of institutions, see §1014 "Historical and Statutory Notes," it is readily apparent to the court that the law is intended to protect federally insured financial institutions -- as well as the government which insures those institutions – not just from those who would cause harm to a financial institution by making false statements in furtherance of a loan, but those who would make false statements that influence in *any way* a covered institution's decision as to *any purchase*. The court need not reach far outside the Complaint or be an expert in economics to take notice that it was the trading of toxic RMBS between financial institutions that nearly brought down the banking system in 2008. While investment or "speculation" in mortgage-backed securities by banks was clearly not on Congress's radar in 1948 when Section 1014 was enacted, such business activities in the form of "purchases" are, for better or for worse, now part and parcel of the banking industry as is conventional lending. Fraud in securing funds from a covered institution to purchase securities has just as much potential, if not more, to bring down an institution as does fraud in securing a loan.

The court is, however, keenly aware of Judge Ripple's dissent in Krilich, 159 F.3d at 1031-32, which relies on Williams and United States v. Devoll, 39 F.3d 575, 579 (5th Cir. 1994), among other cases, for the proposition that Section 1014 only applies to lending activities. The

12

dissent could very well be right, however, the Seventh Circuit's analysis is highly persuasive and *may well be* sufficient for this court to allow the claim to survive Rule 12(b)(6), especially since no liberty interest is at stake in this civil action.

With that issue explored, the court will decline to either overrule or sustain the Objection at this time as the government has also sought leave to amend as to its Section 1014 claim. Objections (#33) at 22-24. In an abundance of caution the request to amend will be allowed, mooting the Motion to Dismiss. The court will not, however, be bound by this discussion in the event the government elects to include a Section 1014 claim in its First Amended Complaint and will consider, if necessary, further arguments as to why the Seventh Circuit may be wrong.

### ORDER

**IT IS, THEREFORE, ORDERED** that plaintiff's Motion to Amend (contained in the Objection) is **ALLOWED**, and plaintiff shall file its First Amended Complaint within 30 days. Defendants' Motion to Dismiss (#19), plaintiff's Objection (#33), and the Memorandum and Recommendation (#31) are all terminated without prejudice as **MOOT.**

Signed: June 19, 2014

Max O. Cogburn Jr.
United States District Judge